Maloney v. Collier.

G. L. MALONEY *v.* A. DONALD COLLIER.

!(*Knoxville.*    September Term, 1903.)

1.  **ELECTION.**  Void to an extent sufficient to change the result
    had all voted one way is void as a whole.

    Where an election is void in a sufficient number of wards and dis-
    tricts to change the result of the election had all the voters
    in said wards and districts voted one way, the whole election is
    void.  (*Post, pp.* 84, 85, 89, 90, 103, 104.)

2.  **CONTESTED ELECTION.**  Allegations as to number of votes
    must be specific and not indefinite.

    In a contested election case seeking relief by purging the polls,
    casting out all the votes improperly counted for contestee, and
    adding to the vote of the contestant all the votes really received
    by him at the election, and not counted for him, an allegation
    that contestant received "many legal votes" which were not
    counted for him, and that "many votes" were counted for con-
    testee which were illegal and fraudulent, is too general and
    indefinite for any purpose whatever as to the number of votes.
    (*Post, pp.* 84-89, 104, 105.)

    Cases cited with approval:   Skerrett's Case, 2 Parsons, 509;
    Mann v. Cassidy, 1 Brewster, 11; Gibbins v. Sheppard, 2 Brew-
    ster, 2; Batturns v. Megary, 1 Brewster, 162; Carpenter's Case,
    2 Parsons' Select Equity Cases, 543; Kneass' Case, Id., marg.,
    p. 553.

3.  **SAME.**  Validity of election may be determined in contested
    election case.

    It is settled law under the authorities in this State that the val-
    idity of an election may be determined in a contested election
    case, especially where the Code provides for the contest.
    (*Post, pp.* 90-95.)

Maloney v. Collier.

Cases cited and approved: Marshall v. Kerns, 2 Swan, 67; Railroad v. Davidson Co., 1 Sneed, 693-694; McCraw v. Harralson, 4 Cold., 34; Barry v. Lauck, 5 Cold., 588; Puckett v. Bean, 11 Heis., 600; Lewis v. Watkins, 3 Lea, 174; State v. Birchfield, 12 Lea, 30; Lawrence v. Ingersoll, 88 Tenn., 52.

Code cited and construed: Secs. 1308-1332 (S.); secs. 1097-1121 (M. & V.); secs. 888-912 (T. & S. and 1858).

**4. SAME. Validity of election cannot be determined where contest lies, when.**

The validity of an election cannot be tried under sections 5165 to 5180 of Shannon's Code, where a contested election, which is usually a contest as to which of two parties was elected, may be instituted and prosecuted. (*Post, pp.* 95-101.)

Cases cited and approved: State, ex rel., v. Conner, 8 Bax., 11; State, ex rel., v. Wright, 10 Heis., 237; State v. Campbell, 8 Lea, 74; State v. McConnell, 3 Lea, 332; State, ex rel., v. Glenn, 7 Heis., 472; Winston v. Railroad, 1 Bax., 60; Anderson v. Gossett, 9 Lea, 647; Hooper v. Rhea, 3 Shannon's Cases, 147.

Code cited and construed: Secs. 5165-5180 (S.); secs. 4146-4161 (M. & V.); secs. 3409-3424 (T. & S. and 1858).

**5. OFFICE. Defined.**

Office is an incorporeal right, and consists in the right to execute a public trust and to take the emoluments belonging to it; and an injury to this right is an injury to a private right. (*Post, pp.* 100-101.)

Cases cited and approved: Dodd v. Weaver, 2 Sneed, 670; Boring v. Griffith, 1 Heis., 456; Moore v. Sharp, 14 Pickle, 65.

**6. CONTESTED ELECTION. Defined.**

A contested election is usually a contest as to which of two parties was elected, and is not in any sense a criminal proceeding, but a controversy between two private individuals, as to the right to exercise the functions and enjoy the emoluments of the

Maloney v. Collier.

office, and a party has a right to enforce it by civil proceedings. (*Post, pp.* 97, 101.)

Cases cited and approved: Dodd v. Weaver, 2 Sneed, 670; Boring v. Griffith, 1 Heis., 456; Moore v. Sharp, 14 Pickle, 65.

7. **SAME. Invalidity of election must be tried in contested election case under statute.**

The *validity of any election for which a contest proceeding* is provided by the Code must be determined and can only be determined in that form, and it cannot be entertained by the court of chancery under sections 5165 to 5180 of Shannon's Code; and if acts in violation of the elective franchise cannot be redressed under the statutes which make provisions for contested elections, they can not be redressed at all. (*Post, pp.* 101, 102.)

8. **SAME. Same. Invalidity of election may be sole redress sought.**

Redress for the invalidity of an election may be the sole purpose of an action, and there need not be an assertion on the part of the party making such question that he received a sufficient number of votes at the election to entitle him to the office. (*Post, p.* 102.)

9. **SAME. Same. Whether only a candidate or any citizen may make questions as to validity of election is reserved.**

Question whether any citizen, as such, who was not a candidate at the election in question, or who is not interested in the office as incumbent, can make the question as to the invalidity of the election, is not decided, but a *dictum* is cited going to such extent. (*Post, p.* 102.)

Case cited: Marshall v. Kerns, 2 Swan, 67, 71-72.

10. **SAME. Any court or person required to induct into office or to recognize the officer may question validity of election.**

Any court or officer whose duty it is to induct the person offering into office, or who is called upon by legal process, as by mandamus, to recognize him, may make the point of the invalidity of the election. (*Post, p.* 102.)

Maloney v. Collier.

11. **SAME.** Invalidity of election and contestant's election may be alleged.

In every contested election case under the Code, two distinct grounds of action may be alleged, namely, first, that the election is void, and secondly, if valid, that the contestant is entitled to the office, on the ground that, after a purging of the polls, it will appear that he has received a majority of the votes cast at such election. (*Post, p.* 102.)

12. **SAME.** Same. Improper statement of one ground does not affect the other ground properly stated.

In a contested election case, one of the grounds may be properly stated on the face of the petition, and the other improperly or not sufficiently stated, and one may be stricken out on demurrer for insufficiency and the other retained as being stated with sufficient fullness and accuracy to meet the objections raised by demurrer. (*Post, pp.* 102-103.)

13. **SAME,** Same. Same. One of the two grounds properly stated may be sustained and the other rejected on the evidence.

In a contested election case both the invalidity of the election and its validity and contestant's election after purging the polls may be stated on the face of the petition with sufficient fullness and accuracy to resist the assaults of a demurrer and the parties may go to proof, and one be sustained and the other rejected on the evidence. (*Post, p.* 103.)

14. **SAME.** Jurisdiction of contested election case over office of county judge.

A petition addressed to the chancellor of the division in which the election was held is sufficient in a contested election case over the election and office of a county judge. (*Post, p.* 105.)

Code cited and construed: Secs. 1313, 1320 (S.); secs. 1102, 1109 (M. & V.); secs. 893, 900 (T. & S. and 1858).

112 Tenn—6

Maloney v. Collier.

FROM KNOX.

·   Appeal from the Chancery Court of Knox County.—
W. L. WELCKER, Special Chancellor.

LUCKEY, SANDFORD & FOWLER, for Maloney.

J. W. CALDWELL, JEROME TEMPLETON, HORACE VAN-
DEVENTER, SAMUEL G. SHIELDS, and CHARLES T. CATES,
JR., for Collier.

MR. JUSTICE NEIL delivered the opinion of the Court.

This is a contested election case, brought before the
chancellor presiding over the chancery court of Knox
county.

The contestant, G. L. Maloney, alleges that upon the
face of the returns for the August election, 1902, as
compiled by the canvassing board, he received in Knox
county, as a candidate for re-election as county judge,
3,322 votes, and the contestee, A. Donald Collier, for
the same office, 4,816 votes, on the face of said returns,
and that the certificate of election was accordingly is-
sued to the contestee. The petition sets out the votes
by precincts as they were returned for each of the can-

Maloney v. Collier.

didates, and they make the respective totals above indicated.

The petition attacks specially the following wards in the city of Knoxville: first, third, fifth, sixth, seventh, ninth, and eleventh.    It also attacks the seventeenth and eighteenth civil districts of the county.

The vote in the wards referred to as shown by the face of the returns was as follows:

### Wards in the City of Knoxville.

|  | For Contestant | For Contestee |
|---|---|---|
| 1st Ward .................... | 114 | 211 |
| 3rd Ward .................. | 44. | 150 |
| 5th Ward .................. | 53 | 265 |
| 6th Ward .................. | 59 | 302 |
| 7th Ward North............. | 84 | 232 |
| 7th Ward South............. | 15 | 504 |
| 9th Ward North............. | 94 | 362 |
| 9th Ward South............. | 70 | 337 |
| 11th Ward .................. | 118 | 522 |
|  | 641 | 2885 |

### Civil Districts of the County.

|  | For Contestant | For Contestee |
|---|---|---|
| 17th District, Asbury.......... | 50 | 13 |
| 17th District, Pickles.......... | 1 | 23 |
| 18th District ................. | 10 | 44 |
|  | 61 | 80 |

The total, therefore, shown by the face of the returns, appearing thereon for contestant in these special wards and civil districts attacked, is 702; the total for the contestee for the same wards and civil districts on the face of the returns is 2,965. The two together made 3,667.

This total, if all should vote one way, would be sufficient to change the result of the election. If it should all be given to the contestee, it would run his total vote in the county up to 5,518, and would reduce contestant's total vote to 2,620. On the other hand, if it should all be given to Maloney, it would run his vote up to 6,287 and would reduce the vote of Collier, the contestee, to 1,851; the latter having received very much the largest number of votes in the said wards and civil districts specially attacked.

The allegations of the petition with respect to these several wards and civil districts—especially the former —are very voluminous, and it is unnecessary to reproduce them here. It is sufficient to say that, while the petition contains many statements far too general and vague to come within the designation of valid pleading, yet we are of the opinion that enough is stated therein in respect of the wards and civil districts referred to, which, if sustained, would necessarily result in a judgment that the election was void in the several said wards and civil districts.

If the election should be held void in the said wards and civil districts referred to, the necessary result would be that the entire election of the county would have to

be held void as between the contesting parties, because, as before stated, there were enough votes polled in the said wards and civil districts to change the result of the election in the county, if all should be treated as voting one way, which is the legal test applicable under such circumstances.

This is one ground of relief set out in the petition. Another ground alleged is that upon a purging of the polls, casting out all of the votes improperly counted for contestee, as alleged in the petition, and adding to the column of the contestant all of the votes really received by him at the election, as alleged in the petition, the result would show that contestant was really elected.

The specifications contained in the petition upon this subject are as follows:

First ward:   That contestant received over 160 legal votes in this ward, of which over 46 were not counted for him in the returns, as they should have been, but were unlawfully cast aside, destroyed, miscalled, or otherwise miscounted or not counted, and taken away from contestant by fraudulent and illegal methods and practices; and that over 50 votes counted for contestee in said ward were never cast for him at all, and should not have been counted for him, but were so counted.

Third ward:   That in this ward contestant received over 94 legal votes, more than 50 of which were not counted for him, but should have been counted; and that over 50 votes counted for contestee in said ward were

illegal, and should not have been counted for him, but were counted.

Seventh ward south: That contestant received over 150 legal votes in this precinct, over 135 of which were not counted for him in the returns, as they should have been; and that over 350 votes counted for contestee in in this precinct were illegal and fraudulent, and should not have been counted for him but were counted.

Ninth ward north: That contestant received more than 140 legal votes in this precinct, over 46 of which were not counted for him in the returns, as they should have been; and that over 100 votes counted for contestee in this precinct were fraudulent and illegal, and should not have been counted for him, but were counted.

Ninth ward south: That contestant received over 150 legal votes, more than 80 of which were not counted for him on the face of the returns, as they should have been; and that over 157 votes counted for contestee in this precinct were fraudulent and illegal, and should not have been counted for him, but were so counted.

The eighth district, Powell's station: That contestant received 80 legal votes, but only 40 were counted for him.

Tenth district, Concord: That at this precinct contestant received 85 legal votes, but only 40 were counted for him.

Tenth district, Campbell's station: That at this precinct contestant received 40 votes, but only 20 were counted for him.

Maloney v. Collier.

Counting up the votes of which contestant claims to have been thus illegally deprived, they number 452.

Counting up the votes thus alleged to have illegally reckoned for contestee, they number 707.

If we add to the total vote shown by the face of the returns the 452 of which contestant claims he was illegally deprived, the footing shown is 3,774.

If we deduct from the contestee's total vote shown by the face of the returns (4,816) the above-mentioned number of votes (707) so alleged to have been illegally counted for him, the subtraction still leaves standing for him 4,109 votes.

That is, upon the face of the petition, after adding to contestant's side of the account all of the votes of which he specifically claims he was deprived, and deducting from the contestee's total all of the votes which the petition specifically claims were illegally counted for him, there still remains a majority of 355 votes in favor of contestee.

With respect to the fifth ward, the petition contains the following general allegation:

"Contestant charges and avers that he received many legal votes in said ward, many of which were not counted for him in the returns, as they should have been but were unlawfully cast out, destroyed, miscalled, or otherwise miscounted by means of one or more of the fraudulent and illegal practices above set out; and that many votes counted for contestee in said ward were fraudulent and illegal for one or more of the reasons

stated, or were never cast for him at all, and should not have been counted for him, but were counted for him by means of one or more of the fraudulent and illegal practices above set out."

Here it is observed that the petition states no number of votes whatever, but simply says "many legal votes." This is too general and indefinite for any purpose whatever.

As to the sixth ward, the same allegation is made as to "many legal votes," but no number is specified. This is also too general.

The same allegation is made as to the seventh ward north; that is, merely the expression "many legal votes," no number being specified. This is likewise too general and indefinite.

As to the eleventh ward, no allegation on this subject is made.

Nor is there any allegation upon this subject as to the second, fourth, and tenth wards.

As to the eighth ward, it is alleged that the contestant was deprived of "a number of votes," but no number is specified. This is too general.

No allegation upon the subject, specifying any number of votes lost to the contestant, is made as to any other civil district in the county besides above mentioned.

The petition closes with the following general allegations as the summing up of the contentions based upon the preceding specifications:

"Contestant further avers and charges that the elec-

tion in said several wards and districts specifically complained of as above, except the Asbury precinct of the seventeenth district, was so irregular, so gross and palpable in its denial of a free and equal election, so characterized by the absence of the statutory precautions essential to the free and honest attainment of the will of the community, and to the validity of the election, in such wards and districts, and so incurably uncertain in results, that the entire election in said several wards and districts specifically complained of was and is a nullity.

"Contestant also specifically avers that of the legal votes cast in the entire election he received a clear majority over contestee, and is entitled for that reason to be declared the duly elected county judge in said election."

The two special prayers of the petition are the third and fourth, as follows:

"(3)   That on the hearing at said trial the said election returns be purged of their falsehood and fraud, and be made to show the true legal vote which contestant received or would have received and which contestee received, and that judgment be given declaring contestant duly elected as county judge in such election, and that the same be certified as required by law.

"(4)   That, in the event said election shall be found to have so grossly and palpably failed in affording an opportunity for the free and equal expression of the will of the people, and to have been so irregular, illegal, fraudulent, and uncertain as to be invalid and void, that

it be so declared, and such election be altogether annulled."

The defendant interposed a demurrer to the petition, containing seven grounds. We do not think it necessary to refer specifically to all of these grounds. Some of them have already been incidentally disposed of in what we have said as to the sufficiency of the allegations made for the purpose of declaring illegal and void the entire election in the several wards of the city of Knoxville and the civil districts of the county especially attacked for that purpose in the petition, and which we have already designated by number; and also in what we have said concerning the number of votes of which the petitioner claims that he was illegally deprived in certain wards of the city and civil districts of the county; and also in what we have said in disposing of the allegations of the petition as to illegal votes alleged to have been counted for the contestee; and also in what we have said as to the language of the petition being too general as to certain other wards and civil districts.

There remain only three grounds or three points made by the demurrer to be disposed of.

These present the following legal contentions: First, that, assuming the election to be valid, the petitioner shows no right in himself to the office, because, allowing to him all votes of which he claims he was deprived, and taking from the contestee all of the votes which it is alleged he wrongfully received, there is still

left to the contestee a majority of the votes; secondly, that the petition is contradictory and confused in that it seeks both to have the contestant declared elected, and to have the entire election in Knox county, declared void; thirdly, that the chancery court has no jurisdiction of the matters contained in the petition.

We shall dispose of these three points together.

It is settled law, under the authorities in this State, that the validity of an election may be determined in a contested election case. *Marshall* v. *Kerns,* 2 Swan, 68; *McCraw* v. *Harralson,* 4 Cold., 34; *Barry* v. *Lauck,* 5 Cold., 588; *Pucket* v. *Bean,* 11 Heisk., 600; *Lewis* v. *Watkins,* 3 Lea, 174; *State* v. *Burchfield,* 12 Lea, 30; *Lawrence* v. *Ingersoll,* 88 Tenn., 52, 12 S. W., 422, 6 L. R. A., 308, 17 Am. St. Rep., 870.

It will be found useful to refer especially to such of the foregoing cases as bear most strongly upon the proposition above stated.

In *Marshall* v. *Kerns* it appeared that Marshall and Kerns had been opposing candidates for the office of circuit court clerk. On the face of the returns Marshall had received the greater number of votes, and had received the certificate of election. Armed with this certificate, and prepared with proper bonds, Marshall appeared before the court, and asked to be inducted into the office of clerk. Kerns, who was the old clerk, and the then incumbent, objected, and asked leave of the court to contest. This was granted. The ground of the contest was, it appears, that no election had been held

in one of the civil districts of the county, and that there were enough voters in that district, present and desiring to vote to change the result, if they had all voted one way.   (See this case explained on this point in *L. & N. R. R. Co.* v. *County Court,* 1 Sneed, 693, 694,   62  Am. Dec., 424.)   On this ground the contest was sustained, the election declared void, and Kerns allowed to hold as incumbent.

*McCraw* v. *Harralson*:   In the statement of the facts preceding the opinion in this case this is called a "contest about the validity of the election of tax collector for Obion county."   Really, however, there was no opposing contestant.   The county court simply refused to induct the party holding the certificate of election on the ground that the election was void for certain reasons set out in the opinion, and that no one was elected.   On appeal the circuit court affirmed the action of the county court: but this court held that the election was not void, and remanded the cause for the induction of the officer. No doubt was expressed upon the point that the county court had the right to refuse to induct if the election was in fact void.

*Barry* v. *Lauck*:   The parties were opposing candidates for the office of chancellor.   Lauck had a majority on the face of the returns.   Barry was already in, as appointee of the governor.   He brought his petition to have the election declared void.   The court, before proceeding to dispose of the matter, it is true, remarked that no objection had been taken to the right of Barry

to file a petition of such a nature, but did not hesitate to exercise the jurisdiction, and to examine the questions involved, and thereupon declared the election void.    The ground upon which it was declared void was that there were a sufficient number of civil districts in the several counties in the division which had not held elections to change the result if the voters therein had voted all one way.

*Lewis* v. *Watkins*:   In this case it appears that the parties had been opposing candidates for the office of sheriff of James county.  Lewis was the successful party on the face of the returns, and thereupon Watkins opened a contest with him, and in his pleadings stated two grounds:   First, that he himself had received the majority of the votes; secondly, that Lewis was disqualified to hold the office, because he was a defaulter, on the day of the election, to the State and county.    The question for determination in the court below and in this court was whether these two grounds were incongruous; in short, whether the second ground was matter for a contested election proceeding.    The court below held that it was proper matter for such a proceeding, and this court sustained its ruling, and declared the election void thereunder.

Indeed, the court in that case said:   "The provisions of the Code seem to contemplate this as one    of   the grounds of contest, and provides for the   judgment   in precisely such a case when the finding is in favor of the defendant on the question of election, but against him

on the point of his legal or constitutional disqualification."

At this point it is proper that we should refer to the sections of the Code bearing upon the question. Title 6,. c. 3, is devoted to the subject of contested elections, and is divided into five articles. The first article is entitled: "Jurisdiction of Contested Elections." It makes. provisions for the contest of numerous offices; among others, contests for judicial offices. Article 2 refers to. contested elections of justices of the peace. Article 3. contains special provisions concerning contested elections of judges and chancellors and attorneys-general.. After directing that the trial should be had before a. chancellor, it gives (section 904, Code 1858 [Shannon's. Code, 1324]) the following directions concerning the. judgment to be rendered in such a case: "If the chancellor decide the election to be void, or that each of the two candidates received an equal number of votes, the. governor shall issue a writ of election to fill the vacancy."

Article 4 of the chapter referred to is entitled: "Judgment on Contested Election Cases, and the Effect Thereof." These provisions are general, and seem to apply to. all of the offices mentioned in the preceding article, and to be directed to all tribunals having jurisdiction to try. these matters. These provisions are embraced in sections 907, Code 1858 (Shannon's Code, section 1327) to. 912 (Shannon's Code, section 1332), and are as follows:

"After hearing the allegations and proof the court.

Malcney v. Collier.

shall give judgment, either confirming or annulling such election altogether, or declaring some other person than the one whose election is contested duly elected.

"If it appear that any other person than the one whose election is contested received or would have received, had the ballots intended for him and illegally rejected been received, the highest number of legal votes, judgment shall be given declaring such person duly elected.

"This judgment, if it be in relation to an officer commissioned by the governor, shall be certified to the secretary of state; and in all other cases to the tribunal before whom the officer is required to qualify.

"Such judgment has the effect of depriving the person whose election is contested of all right or claim to such office, and of investing the person declared by such judgment duly elected, with the right thereto.

"It it appear that two or more persons have, or would have had, if the ballots intended for them and illegally rejected had been received, the highest number of votes for such office, the judgment shall be accordingly, and certified to the officer entitled by law to give the casting vote, if any, and if none, to the officer authorized to fill the vacancy, or order a new election.

"When the person whose election is contested is found to have received the highest number of legal votes, but the election is declared null by reason of constitutional disqualifications on his part, or for other causes, the person receiving the next highest number of votes can not

be declared elected, but the election shall be declared void, and so certified to the power authorized to fill the vacancy or order a new election."

So that it appears not only from the decisions cited, but also from the Code itself, that the validity of any election concerning which the Code makes provisions for contest may be determined in such contest proceedings.

Furthermore, there are no other provisions made by our laws for the disposition of such a matter.

The only other provisions which have been suggested as covering the point are those contained under part 3, tit. 2, c. 8, of Shannon's Code. This chapter is entitled "Of Proceedings in the Name of the State against Corporations and to Prevent the Usurpation of Office."

The sections of that chapter supposed to be specially applicable are 3409, Code 1858 (Shannon's Code, section 5165) to 3424 (Shannon's Code, section 5180), inclusive.

But section 3423, Code 1858 (Shannon's Code section 5179), expressly provides as follows:

"The validity of any election which may be contested under this Code, can not be tried under the provisions of this chapter."

Our cases bearing upon this matter are *Conner* v. *Conner,* 8 Baxt., 11; *State, ex rel.,* v. *M. J. Wright,* 10 Heisk., 237; *State* v. *Campbell,* 8 Lea, 74; *State* v. *McConnell,* 3 Lea, 332; *State, ex rel.,* v. *W. A. Glenn,* 7 Heisk., 472.

We shall now refer especially to these cases.

*Conner* v. *Conner:* At the August election, 1872, a person was elected sheriff of Hamilton county, who was

incompetent to hold the office under the constitution, and his disqualification had been duly adjudged. Thereupon the county court, entertaining the view that a vacancy was created by these facts, appointed J. G. Conner sheriff of the county. On this being done, A. B. Conner, the preceding sheriff, the real incumbent, conceiving that he had the right to hold over until his successor should be duly elected and qualified, brought a bill in equity against the person elected by the county court, under the aforesaid provisions of Code 1858, sections 3409 to 3424. The court held that the action could not be maintained, and said that it made no difference that the election took place in the county court, instead of before the people, and that A. B. Conner, the relator, was not a candidate at that election. The reason which the court gave was based on a construction of section 3423, Code 1858, which we have just quoted.

The court laid stress on the word "validity," contained in that section and in effect held that, if the election in controversy belonged to one of those kinds or classes of elections for which the Code provided a method of contest, then the validity of such election could not be tested under Code 1858, sections 3409 to 3424, inclusive.

The necessary inference is that the validity of such elections must be determined in a contest proceeding or under the form of a contest.

Indeed, the court says: "A contested election is usually a contest as to which of two parties was elected.

Here the relator claims that the election was void, but the language is imperative that the validity of any election which may be contested cannot be tried in this form. This election might have been contested, and its validity determined by the circuit court. This chapter was not intended to apply to contests as to the validity of an election of this character."

The doctrine of this case is strongly reaffirmed in *Anderson* v. *Gossett,* 9 Lea, 647.

The kind of cases to which sections 3409 to 3424, inclusive, apply, are illustrated by certain of those which we have just cited, viz. :

*State, ex rel.,* v. *M. J. Wright*: Curry and Wright had been opposing candidates for the office of sheriff. The commissioner of registration (the returning officer at that time) counted up the votes, and ascertained a majority of 176 in favor of the relator, Curry, and filed his return in the county court, showing this fact, and marked opposite the name of Curry the word "elected." He also made out his certificate in favor of Curry, but for some reason, not stated, he failed to deliver it to him. After all this had been done, the returning officer assumed the authority of going over the returns and throwing out the vote of the tenth ward of the city of Memphis. He thereupon filed an amended return in the county court, showing what he had done, and how he had gotten at it, and that the result so obtained was a majority of 177 in favor of Wright. The latter was thereupon inducted into the office by the county court.

Then Curry, as relator, brought an action under section 3409 *et seq.* of the Code of 1858, to oust Wright as a usurper. The court sustained the bill on the ground that when the returning officer made his first return he exhausted his authority that his subsequent action was void, and also the induction into office by the county court; that nothing could be looked to in this form of proceeding except the *prima facie* case made by the original return; that upon this *prima facie* case Curry was entitled to the office; that the validity of the election could not be considered in the case; that no such question was or could be made; that the relator not only conceded the validity of the election, but was endeavoring to enforce it; also that the result of that case would not preclude the defendant from entering a contest in the proper forum.

*State* v. *Campbell:* There was a vacancy in the office of county court clerk of Williamson county, and the county judge appointed one Campbell to fill this vacancy. Subsequently the quarterly court elected one Johnson to the same place. Johnson demanded the office of Campbell, but the latter refused to surrender it, whereupon a bill was filed by the State, on relation of Johnson, to oust Campbell, under Code 1858, section 3409 *et seq.* Held that the county judge had no power to make the appointment; that the right to fill the vacancy belonged to the quarterly court, and that the proceeding was properly instituted.

*State* v. *McConnell:* Judge McConnell's right to

.hold the office he was assuming to hold was challenged on the ground that the act which attached his county (Trousdale) to the Fifth circuit, of which he was assuming to act as judge, was no act, because improperly passed by the legislature; that is, not constitutionally passed. This case was held to fall properly under section 3409 *et seq.*

· *State, ex rel.,* v. *W. A. Glenn*: There was a vacancy in the office of county judge of Davidson county, occasioned by the death of the incumbent. The county court, assuming that it had the right to fill this vacancy, appointed W. A. Glenn. The governor appointed the relator, T. T. Smiley. The latter demanded the office. Glenn refused to yield. Thereupon Smiley brought a bill against him (*ex rel.*) to oust him as a usurper. The bill was sustained the court holding that the governor had the power of appointment, and that the appointment by the county court vested no title.

There are some other cases—*Winston* v. *Tenn. & Pacific R. R. Co.,* 1 Baxt., 60, and *Hooper* v. *Rhea,* 3 Tenn. Cas., 147—that illustrate other phases of the application of the Code sections referred to in respect of elections, but not very closely related to the matter we have in hand, and they need not be specially noticed.

We think the authorities cited on the two propositions above announced, respectively, fully establish them.

It is said in *Dodd* v. *Weaver,* 2 Sneed, 670, that office is an incorporeal right, and consists in the right to exe-

cute a public trust, and to take the emoluments belonging to it, and that an injury to this right is an injury to a private right, for which there ought to be a remedy; and in *Boring* v. *Griffith,* 1 Heisk., 456, that a contest is not in any sense a criminal proceeding, but a controversy between two private individuals as to the right to exercise the functions and enjoy the emoluments of the office; that it is an incorporeal right, and the party has a right to enforce it by civil proceedings; and the same language was in substance repeated in *Moore* v. *Sharp,* 98 Tenn., 65, 38 S. W., 411.

The foregoing statements of principle are sound, and were correctly enunciated in the cases where they occur. But they do not contravene the principle that a contested election case may have another aspect, when that is brought to the attention of the court by proper pleading, viz., that of annulling, as between the contesting parties, the whole election, with a view to having another contest before the people. The principles referred to above, therefore, while they truly represent one phase of contested election cases in this State, cannot do away with the two principles, so fully sustained by the authority of statutes and decisions, that the validity of any election for which a contest proceeding is provided by the Code must be determined and can only be determined in that form, and it cannot be entertained by the court of chancery under Code 1858, section 3409 *et seq.* In short, the authorities referred to seem to establish most conclusively that, if acts in violation of the elective fran-

chise cannot be redressed under the statutes which make provisions for contested elections, they cannot be redressed at all. These authorities also establish the proposition that such redress may be the sole purpose of an action, and that there need not be an assertion on the part of the party making such question that he received a sufficient number of votes at the election to entitle him to the office. It has not been held, however, that any citizen, as such, who has not been a candidate, or rather who was not a candidate at the election in question, or who was not interested in the office as incumbent, could make such a question, though there seems to be a dictum at the close of the opinion in *Marshall* v. *Kerns,* supra, going to that extent. The extent to which the decisions really go upon this point is that any court or officer whose duty it is to induct the person offering into office or who is called upon by legal process—as by mandamus—to recognize him, may make the point.

It seems to follow from the authorities cited, and as, in substance, is especially held in *Lewis* v. *Watkins,* supra, that in every contested election case under the Code two distinct grounds of action may be alleged, namely, first that the election is void, and, secondly if valid that the contestant is entitled to the office on the ground that, after a purging of the polls, it will appear that he has received the majority of the votes cast at such election. It likewise follows that one of the grounds may be properly stated on the face of the petition and the other improperly or not sufficiently stated,

and that one may be stricken out on demurrer for insufficiency, and the other retained as being stated with sufficient fullness and accuracy to meet the objections raised by demurrer.   It also follows that both may be stated on the face of the petition with sufficient fullness and accuracy to resist the assaults of a demurrer, and that the parties may go to proof, and one be sustained and the other rejected on the evidence,

It results that the point taken in the demurrer to the effect that these two grounds of action are incongruous and connot be united in the same petition or complaint is not well taken, and must be overruled.

Before passing from this point it is proper to note a statement made in connection with petitioner's allegation covering the first complaint in respect of the annulling of the election upon declaring void the election in the several wards and districts specially attacked, viz., "leaving contestant a clear majority over the contestee in the other wards and districts of the county in which the fairly regular elections were held, and entitling him to be declared the duly elected county judge in said election."   This matter in quotation marks must be treated as mere surplusage.   No such result could, in the present case, under the allegations of the petition, follow, for the reason that, as already stated, the districts and wards referred to, if thrown out, will necessarily, as between the contesting parties, annul the election, because it appears from the face of the petition that there were a suf-

ficient number of voters in said wards and districts, if all should vote one way, to change the result of the election.

Passing to the next point, we are of the opinion that the demurrer must be sustained as to it, because, assuming the election to be a valid one, as the petition in stating this point necessarily does, yet, taking everything stated as true in respect of the number of votes of which the petitioner was deprived, and which were wrongfully given to the contestee, the result is not changed, but there still remains in favor of the contestee a majority of 335.

It is perceived that in reaching this conclusion as to the number of votes in the former part of this opinion we allowed to the contestant all of the votes in each ward and precinct wherein he specified the number of which he was illegally deprived and the ground of illegality; and, similarly, that we deducted from the vote of the contestee in each of said precincts the number alleged in the petition, with the ground of illegality. It is also perceived that we declined to make any addition or deduction where the allegation was in mere general terms—"many legal voters," and similar expressions. This ruling is fully sustained by authority. Skerrett's Case, 2 Pars. Eq. Cas., 509; *Mann* v. *Cassidy*, 1 Brewst., 11; *Gibbins* v. *Sheppard*, 2 Brewst., 2; *Batturs* v. *Megary*, 1 Brewst., 162. All of these cases are found either reported in full or stated in the notes in Brightly's Leading Cases on Elections, pp. 320, 335,

336, 351.  In Skerrett's Case it was held that a petition complaining of an undue election and return must set forth the facts with precision, and that they must be sufficient, if sustained by proof, to render it the duty of the court either to vacate the election or to declare that another person than the one returned was duly elected; and that, unless the petition be thus specific, and set forth facts that, if true, would have changed the result, it must be quashed on motion.  In *Mann* v. *Cassidy,* it was held that the petition must state the facts distinctly; that it must charge an undue election and false returns; that it must show the figures returned for each candidate; that it must also show the votes which were received by each; and then specify the divisions—that is, voting precincts—in which the votes were illegally received, the manner in which the fraud was effected, and the number of votes fraudulently received.  In Carpenter's Case, 2 Pars. Eq. Cas., 543, it was held that, unless a petition contesting an election set forth such facts as would change the result, the court will not entertain it, nor order an investigation, but will quash it.  See, also, Kneass' Case, Id., marg. p. 553.

The last ground of demurrer, going to the question of jurisdiction, must be overruled.  The petition is addressed to the chancellor of the division in which the election was held, and that is sufficient.  Code 1858, section 893 (Shannon's Code, section 1313) ; and see Code 1858, section 900 (Shannon's Code, section 1320) *et seq.*

It results that the petition is retained in so far as it attacks the validity of the election, but in other respects dismissed, the demurrer as to these matters being sustained.

The costs of this court will be equally divided between the contestant and contestee, and the cause remanded for issue and trial.