748

CITY OF GREENFIELD et al.,
Appellants-Plaintiffs,

v.

Charles T. BUTTS, County Judge of
Weakley County, et al.,
Appellees-Defendants.

Supreme Court of Tennessee.

Nov. 27, 1978.

George C. Thomas, Jr., David H. Welles, George C. Thomas, III, Dresden, Harold T. Brundige, William Michael Maloan, Martin, Robert L. Hearn, Greenfield, for appellants-plaintiffs.

Harry Max Speight, Dresden, for appellees-defendants.

OPINION

HARBISON, Justice.

This action was brought on behalf of five municipalities situated within Weakley County and by certain officials of those cities challenging a sales tax referendum held by the County pursuant to T.C.A. § 67–3053.

Although a number of other issues were involved, the Chancellor held that none of the parties plaintiff, appellants here, had standing to contest the election under the provisions of T.C.A. § 2–1701. Because we find that the evidence supports the conclusion of the Chancellor on that issue, we affirm his decision and do not find it necessary to deal with the numerous election irregularities asserted by appellants.

The action was instituted as an election contest. The pertinent provisions of T.C.A. § 2–1701 are:

"The incumbent office holder and any candidate for the office may contest the outcome of an election for the office. Any campaign committee or individual which has charge of a campaign for the adoption or rejection of a question submitted to the people may contest the election on the question."

Some years prior to the Weakley County election, which was held on May 13, 1977, each of the five municipalities had held referenda and had adopted local sales taxes pursuant to the 1963 Local Option Revenue Act, T.C.A. §§ 67–3049 *et seq.* Under the provisions of that Act, however, counties are entitled to priority over cities, and when a county imposes a local sales tax, it supersedes that levied by the cities. Residents of municipalities within a county are not entitled to vote in a county referendum. T.C.A. § 67–3053(b).

It is apparent that none of the municipal corporations themselves could challenge the election under the provisions of T.C.A. § 2–1701. Nevertheless, officials of these cities were concerned over the loss of revenues which would be sustained if the Weakley County referendum resulted in a favorable vote on the enabling sales tax resolution adopted by the quarterly county court.

The individuals who are named as plaintiffs in the present case are the mayors of four of the cities and the vice mayor of the fifth. These officials held two meetings during May, 1977, prior to the county election, and also conferred with their respective municipal aldermen or commissions. At their second meeting they had their city attorneys present for advice and consultation. No minutes were kept of the meetings, but one of the mayors was elected a temporary chairman. All of the cities had adopted their budgets for the 1977–1978 fiscal year, or were in the process of doing so, and they were particularly concerned over the possible loss of revenues during that year if the county sales tax should be adopted.

It is undisputed, however, that at their meeting these city officials concluded that they would not advertise, expend funds, or campaign in any organized way against the adoption of the county sales tax resolution. Instead, the testimony of all of them was to the effect that they would await the outcome of the election and then authorize their attorneys to take such steps as might be necessary either to set aside the election, if it were not properly held, or to protect the city revenues at least for the ensuing fiscal year. The mayors testified that they felt there was considerable confusion among the voters and that many people did not understand the issues. They concluded that their best interests lay in not making an organized effort to defeat the resolution for fear that they might create active support for it. Some of them discussed the issues privately with voters, but none of them, individually or collectively, engaged in any organized campaign with respect to the question presented in the referendum.

Although only a fairly small number of registered voters participated in the election, the resolution was ratified by a favorable vote. The city officials then, individually and also in the names of their municipalities, instituted the present election contest.

The Chancellor was of the opinion that these city officials did not constitute a "campaign committee" or individuals who had "charge of a campaign for the adoption or rejection of a question submitted to the people" within the purview of T.C.A. § 2–1701. We are of the opinion that this conclusion was entirely correct. While this statute does not contain a definition of a "campaign committee" or of a "campaign" regarding a question, we believe that it would be an unreasonable interpretation to hold that a group of individuals, who were not even qualified to vote, could simply agree privately to oppose a referendum and then later contend that they had standing under this statute to contest an unfavorable result.

In the Campaign Financial Disclosure Act of 1975, T.C.A. §§ 2–1001 *et seq.*, a "Political Campaign Committee" is defined as:

".   .   . a combination of two (2) or more individuals, or a person other than the candidate, including any political party governing body, whether state or local, receiving contributions and making expenditures, except as provided for in subsection (7) of this section, to support or oppose any candidate or measure or to influence the result of an election, but shall not include a voter registration program;" T.C.A. § 2–1002(i).

750

T.C.A. § 2–1005 requires each candidate and each political campaign committee to appoint a political treasurer and to certify his name and address to the State Librarian and Archivist. In county elections a copy of this notice is to be furnished to the county election commission. The provisions of this statute are applicable whether expenditures or contributions are or are not contemplated.

It is undisputed that appellants did not comply with these statutory provisions or take any other definitive steps with respect to the county referendum, except authorizing their counsel to take legal action if the county sales tax were adopted.

In the case of *Moyers v. Sherrod,* 525 S.W.2d 126 (Tenn.1975), it was held that a citizens group, organized after an election solely for the purpose of contesting the outcome on the basis of alleged irregularities, did not constitute a campaign committee or individuals in charge of a campaign within the purview of T.C.A. § 2–1701. Although appellants in the present case admittedly did have informal meetings prior to the election, it is apparent that their objective was not to organize a campaign in opposition to the question presented to the voters, but to await the results and thereafter take whatever action appellants deemed to be in the interests of their respective cities.

The judgment of the Chancellor dismissing the action is affirmed at the cost of appellants.

HENRY, C. J., and COOPER, FONES and BROCK, JJ., concur.