James W. BRACKIN, individually and as Appointed Authority for Citizens for Repeal of the $35.00 Increase in the Sumner County Wheel Tax Repeal, Plaintiff/Appellee,

v.

SUMNER COUNTY, Tennessee acting By and Through the SUMNER COUNTY BOARD of COUNTY COMMISSION-ERS, Defendant/Appellant.

Supreme Court of Tennessee, at Nashville.

July 8, 1991.

Charles Hill Beaty, Bruce N. Oldham, Beaty & Oldham, Gallatin, for defendant/appellant.

David M. Amonette, Gallatin, for plaintiff/appellee.

## OPINION

O'BRIEN, Justice.

These proceedings were initiated in the Chancery Court for Sumner County by plaintiff, James Brackin, to contest an election pursuant to T.C.A. § 2–17–101, in which the voters of Sumner County approved an increase in the motor vehicle wheel tax by a five-vote margin. The com-

plaint additionally requested the issue of a writ of mandamus to withhold certification of the election results; for a declaratory judgment that the resolution approving the wheel tax was unconstitutional and invalid; an injunction against collection of the tax; impoundment by the court of any taxes previously paid; and for payment of plaintiff's attorney fees.

The cause came on to be heard before the chancellor, without a jury, after which the court issued an extensive memorandum containing findings of fact and conclusions of law, all of which were incorporated into a final decree.

The request for a restraining order or enjoinder of collection of the wheel tax was denied. The request for all wheel tax monies collected to be held in escrow was denied, as was the petition for writ of mandamus to the Sumner County Election Commission to withhold certification of election results. The petition for payment of attorney fees to plaintiff was denied. The court affirmatively decreed that the election held on 30 January 1990 on the question of the wheel tax was void. The Sumner County Board of County Commissioners was ordered to call a new election on the question of a wheel tax.

The Board of County Commissioners has appealed the judgment of the trial court in accordance with T.C.A. § 2–17–116, raising three (3) issues:

(1) Did the trial court err in ruling that the plaintiff has standing to file an election contest?

(2) Did the trial court err in ruling that plaintiff had standing to file a declaratory judgment action?

(3) Did the trial court err in voiding the election based on a vote count discrepancy which was not caused by fraud or statutory violations on the part of election officials and which could have been prevented had all of the voters followed instructions?

On the first question of "standing," the record shows plaintiff filed suit in the name of James W. Brackin, "individually and as appointed authority for citizens for repeal of the $35.00 increase in the Sumner

County wheel tax repeal." Appellant argues that plaintiff made up the name "citizens for repeal of the $35.00 increase in the Sumner County wheel tax," and appointed himself as treasurer when he filed his financial disclosure form. It is asserted that there was never any committee formed, nor any meetings held, and therefore, that Mr. Brackin did not have the standing to bring an election contest under the provisions of T.C.A. § 2–17–101(b), which provides:

The incumbent office holder and any candidate for the office may contest the outcome of an election for the office. Any campaign committee or individual which has charge of a campaign for the adoption or rejection of a question submitted to the people may contest the election on the question.

The trial court ruled from the bench that plaintiff had standing to contest the election on the question of the wheel tax. In his memorandum opinion he based that ruling on the provisions of T.C.A. § 2–17–101(b). He concluded that the General Assembly had, by the enactment of T.C.A. § 5–8–102(c)(2), granted the right of a citizen, by a properly filed petition, to bring to a referendum of the voters the question of a wheel tax and that plaintiff had standing as an individual in charge of a campaign for the adoption or rejection of a question submitted to the people to contest the election on that question.

The appellants, for legal authority, rely on the case of *City of Greenfield v. Butts*, 573 S.W.2d 748 (Tenn.1978). In that case five municipalities situated within Weakley County, through certain officials of those cities, challenged a sales tax referendum held by the county. The chancellor held that none of the parties had standing to contest the election under the provisions of T.C.A. § 2–1701 [T.C.A. § 2–17–101]. This Court agreed with the conclusion of the chancellor on that issue, affirming his decision and finding it unnecessary to deal with election irregularities asserted by the appellants. In concurring with the chancellor's decision the Court commented that although the statute did not contain a definition of a "campaign committee" or of a

"campaign," it would be an unreasonable interpretation to hold that a group of individuals, *who were not even qualified to vote,* could simply agree privately to oppose a referendum and then later contend that they had standing under the statute to contest an unfavorable result. For various reasons to be discussed further on in this opinion, we find that the *City of Greenfield* case is not applicable to the facts presented here.

■ At the outset, we say quickly that we concur in the findings of the chancellor that plaintiff had standing under the provisions of T.C.A. § 2–17–101(b), as an individual in charge of a campaign for the rejection of the wheel tax referendum. His position is ably stated in his brief. He became involved in the issue early on when he read in the newspaper that the county commissioners were considering the adoption of a new wheel tax which would add $35.00 to the $15.00 tax then existing. He knew that the citizenry of Sumner County had rejected a similar wheel tax enhancement by a referendum, approximately two (2) years earlier. When the resolution was passed by the commission to increase the tax, he proceeded to determine the appropriate method to call for a referendum. He learned the number of signatures of qualified registered voters required to call an election, had a petition properly drafted and printed, then proceeded to acquire the requisite signatures. His petition was filed within 30 days of the final approval of the resolution by the county legislative body. He obtained nearly three times the number of signatures required to call the election. He received much of his information and assistance from the office of the election commission. When it became evident he was soliciting funds or taking voluntary contributions for various expenses he was incurring he was advised to file appropriate forms with the registrar of voters office. He appointed himself treasurer to properly account for funds he received. He attempted to keep abreast of the activities involving the referendum, talked to voters and attended both county commission and election commission meetings.

The day after the election it was determined that there was an eight-vote discrepancy in one precinct which would determine the outcome of the election. He went to that voting precinct with officials of the election commission and the county commission to examine the voting machines. He then decided it would be to his own best interest and the best interest of the citizenry to contest the election. There is no doubt that Mr. Brackin was an individual in charge of a campaign. It may not have gotten beyond the stages of a one-man campaign because of the time limitations mandated by T.C.A. § 2–17–105,[1] but he certainly had 6,100 supporters who had signed his petitions, among whom were advocates who had contributed to his campaign.

■ The second prong of defendant's issue on standing relates to plaintiff's right to file a declaratory judgment action. Defendant cites authority for the assertion that a declaration to determine the rights not of a person nor property but of a purely political character, will be denied. Argument is offered for the principle that a special interest is essential to the maintenance of a lawsuit by one as a taxpayer and a property owner. Great store is placed on the decision in *Badgett v. Broome,* 219 Tenn. 264, 409 S.W.2d 354 (1966). Reliance on *Badgett* is misplaced. That case was an action by a taxpayer of a county against certain county officials for a declaration that a county court resolution fixing an alternative tax rate was invalid, and for injunctive relief.

There is a long line of cases applying to the proposition that a citizen and taxpayer of a county does not have standing to maintain a suit for declaratory and injunctive relief against alleged breaches of public duty by county officers. However, there is an equally long line of cases to the effect that a private citizen may intervene to at-

---

**1.** T.C.A. § 2–17–105 requires that a complaint contesting an election under § 2–17–101 shall be filed within ten (10) days after the election.

tack the validity of an election. In *Marshall v. Kerns,* 32 Tenn. 68, 72 (1852), an election contest, the Court said, "We see no reason why the present incumbent, *or other citizen* of the county interested as a citizen in the appointment, might not be permitted to offer legal opposition to a false and void election." (Emphasis supplied). Although this statement of the law was questioned as dictum in *Maloney v. Collier,* 112 Tenn. 78, 102, 83 S.W. 667 (1903), it was not rejected in *Maloney* and has subsequently been affirmed in numerous cases. *Lewis v. Watkins,* 71 Tenn. 174, 178 (1879), cited *Marshall* with approval for this rule of law and held at p. 182 that if the election be void, the contestant, *like any other citizen,* might offer legal opposition to a void election. In *Heiskell v. Lowe,* 126 Tenn. 475, 482, 153 S.W. 284 (1912), James L. Lowe, a resident, citizen, taxpayer and duly registered voter of the City of Knoxville, Tennessee, filed a petition contesting an election for mayor with a prayer, inter alia, that the election for office of mayor be declared void. For various reasons, recited in the opinion, a majority of the court ruled that the suit of the petitioner should be dismissed. In a strongly worded dissent, delivered by Mr. Chief Justice Shields, at 126 Tenn., p. 500, 153 S.W. 284, joined in by Mr. Justice M.M. Neil, the author of the opinion in *Maloney v. Collier,* supra, a preface to the dissent noted:

"... It is not controverted that this case presents an election contest, of which the circuit court of Knox county had jurisdiction, and which the petitioner, J.L. Lowe, as a citizen, voter, and taxpayer of the municipality of Knoxville, had the right to bring and maintain, provided his contention was supported by the facts, which are not controverted; the case being before us upon petition and demurrer, and sound in law. These propositions are abundantly established by the repeated decisions of this court." (Citations omitted).

In *Stone v. Edmondson,* 168 Tenn. 698, 80 S.W.2d 665 (1935), a proceeding was brought by a citizen and taxpayer to invalidate the election for county judge. The court, holding the contest was barred by the code provision requiring a candidate to present a sworn statement of grounds of contest within twenty (20) days after the election, said:

"Insofar as the suit of a candidate seeks to have an election declared void, the candidate occupies the same position as would be occupied by a third party bringing such a suit. The candidate would take no personal benefit from a decree setting aside an election. His only advantage would be that accruing to any citizen from a judgment tending to preserve the purity of elections.

If, therefore, the twenty days' limitation be binding on the candidate, we see no reason why such limitation is not equally binding on the third party bringing suit to have an election declared void. In either case public policy demands a speedy settlement of such matters."

In further support of their argument that plaintiff did not have standing to file a declaratory judgment action defendants cite *Coleman v. Henry,* 184 Tenn. 550, 201 S.W.2d 686, 687 (1947); and *Wright v. Nashville Gas & Heating Co.,* 183 Tenn. 594, 194 S.W.2d 459 (1946), for the principle that a taxpayer who has only such interest in a controversy as the public generally has, and who does not allege any special injury to himself, cannot maintain an action for declaratory judgment.

This issue was analyzed and determined by the court in *Dehoff v. Attorney General,* 564 S.W.2d 361 (Tenn.1978). The court held that a declaratory judgment action seeking to have a special referendum election adjudged a void election, amounted to an election contest. Consequently, the plaintiffs were bound by the applicable period of limitations in the election statutes. The trial court determined that the action, though filed as a declaratory judgment suit, was in reality an election contest and as such was required by T.C.A. § 2–1705 [§ 2–17–105], to be filed within ten (10) days following the election. Since the action was not filed within that period of time, plaintiff's suit was dismissed. This Court affirmed the judgment holding that

limitation statutes do not apply to declaratory judgment suits, *as such*, because a declaratory judgment action is a mere procedural device by which various types of substantive claims may be asserted.

In *Donahoo v. Mason & Dixon Truck Lines, Inc.*, 199 Tenn. 145, 285 S.W.2d 125 (1955), the complainant filed a suit against the truck line with the object to obtain a declaratory judgment as to the validity of certain general statutes of the state. In that regard the court held it to be well settled that a taxpayer who alleges unlawful acts on the part of a legislator *or any other state official* which put him in immediate danger of having his tax burden increased is entitled to maintain his bill. *Also see Phillips v. Anderson County*, 698 S.W.2d 76, 77 (Tenn.1985).

On the basis of the foregoing authorities, we affirm the trial court's judgment in holding that plaintiff had standing to file a declaratory judgment action.

■ Defendants charge as error that a vote count discrepancy which is not caused by fraud or statutory violations on the part of election officials and which could have been prevented had all the voters followed instructions is not grounds for voiding an election. Framed more accurately the question is whether the plaintiff is entitled to contest an election, the results of which were void because of a mechanical malfunction of the voting machines.

This situation arose when the County Commission of Sumner County passed a resolution on 7 August 1989, authorized by T.C.A. § 5–8–102. This statute authorizes counties to levy a motor vehicle privilege tax as a condition precedent to the operation of a motor vehicle within the county. The resolution passed provided for a $35.00 increase in the wheel tax, for a total of $50.00, with the entire proceeds from the tax to be deposited in a special school fund and expended only for school purposes. Final passage of this special wheel tax would roll back the property tax rate by $.27 for a total of $3.11 on each $100 assessed evaluation.

T.C.A. § 5–8–102, which authorizes the tax approved in the resolution, reads in pertinent part as follows:

(b) MOTOR VEHICLE TAX—AUTHORIZATION. Each county is empowered to levy for county purposes by action of its governing body a motor vehicle privilege tax as a condition precedent to the operation of a motor vehicle within the county. The tax may be levied on any motor vehicle taxable by the state.

(c) MOTOR VEHICLE TAX—IMPOSITION.

(1) No resolution authorizing such motor vehicle privilege tax shall take effect unless it is approved by a two-thirds (⅔) vote of the county legislative body at two (2) consecutive, regularly scheduled meetings or unless it is approved by a majority of the number of qualified voters of the county voting in an election on the question of whether or not the tax should be levied.

(2) If there is a petition of ten percent (10%) of the qualified voters who voted in the county in the last gubernatorial election which is filed with the election commission within thirty (30) days of final approval of such resolution by the county legislative body, then the county election commission shall call an election on the question of whether or not the tax should be levied in accordance with the provisions of this section.

(3) The local governing body shall direct the county election commission to call such election to be held in a regular election or in a special election for the purpose of approving or rejecting such tax levy.

(4) The ballots used in such elections shall have printed on them the substance of such resolution and the voters shall vote for or against its approval.

(5) The votes cast on the question shall be canvassed and the results proclaimed by the county election commissioners and certified by them to the local governing body.

(6) The qualifications of voters voting on the question shall be the same as those

required for participation in general elections.

(7) All laws applicable to general elections shall apply to the determination of the approval or rejection of this tax levy.

After the final passage of the resolution plaintiff began collecting signatures on a petition to call for an election on the wheel tax pursuant to T.C.A. § 5–8–102(c)(2). He was informed by the registrar of voters that 2,108 signatures would be required. As previously noted, he prepared a petition, had copies printed, and began collecting signatures with names and addresses. Six thousand one hundred (6,100) citizens of Sumner County signed his petitions. The petition was properly filed in accordance with the statute. On 20 November 1989 the county commission set the referendum on the wheel tax to be held at the August 1990 general election. No official notice of this action was directed to the election commission. At a special called session on 5 December 1989 the county commission passed a resolution requesting the election commission to call a special election on the question of approval or rejection of the tax. The election was set to be held on 30 January 1990 and took place on that date. That evening, after the polls closed, it was unofficially announced that the wheel tax referendum had passed by five (5) votes. On the next day it was announced that a discrepancy of eight (8) votes existed. The election commission found that 267 persons voted at the Vena Stuart precinct, but that the "yes" and "no" votes totaled 259. The election commission determined that voting machines numbered 81572 and 82556 had discrepancies in the "yes" and "no" totals as opposed to the protective counter on the machines. On machine No. 81572 the protector counter recorded 85 votes with the combined total for "yes" and "no" totalling 84 votes. On machine No. 82556 the protector counter recorded 153 votes. The combined total for "yes" and "no" totaled 146 votes. No discrepancy was found on a third machine used at that precinct. Mr. John Denning, a recognized expert consultant recommended by the State Coordinator of Elections, investigated and examined the machines. He testified and reported that a mechanical malfunction on each of the questioned machines developed after the systems had been checked out by the Sumner County Voting Machine technician, before the machines were sealed and released for the election. His report included the remark that, "Regardless of a controlling system malfunction, if the X marks were left showing a (sic) per displaced voting instructions there would not be a vote count discrepancy." This is the basis for defendant's appeal. This is an obvious impossibility unless the machine malfunctioned. If the parties who entered the machines had not voted they would not have been able to exit without assistance from the voting machine attendant. If they voted, as they must have done in order to exit the machine, their votes should have been counted. Mr. Denning, testified that there was no known way to tell which way the people voted who did not have their votes recorded on the machine. As the result of his manual examination he found there was a friction drag on the lock lever of one of the machines which, when let loose slowly, would not return to what he referred to as the "home base." He made the assumption that the malfunction occurred early in the day. The longer the machine was used the less drag occurred. He was not able to determine where the discrepancy occurred, or why, in the one-vote difference in the tally on the first machine. On the other machine, it was his professional judgment that the seven votes unaccounted for were due to a mechanical malfunction. Had it not been for the malfunction there would not have been a count discrepancy. We are of the opinion the trial judge was correct in voiding the election and directing the call of a new election on the question. To hold otherwise would not only disfranchise the eight (8) people whose votes were not counted in the Vena Stuart precinct, but also lead to the disfranchisement of the 5,909 other people who voted against the wheel tax increase.

■ We are of the opinion that Mr. Brackin had standing to contest the election as a private citizen, notwithstanding the provisions of T.C.A. § 2–17–101(b). In express-

ing this view we are not unmindful of the numerous cases to the effect that a private citizen who seeks no relief for himself cannot contest an election solely on the grounds he seeks to redress a public wrong. In *Walker v. Sliger*, 218 Tenn. 657, 405 S.W.2d 471, 474 (1966), the Court cited a number of cases to the effect that such a suit is in the nature of a quo warranto proceeding and must be filed in the name of the State and that an election contest for the sole purpose of having an election declared void may be filed by either an incumbent, the inducting court, or the unsuccessful candidate.

■ We think the distinction should properly be made for cases, such as we have here, where there is none of the three involved, that is an incumbent, an inducting court, or an unsuccessful candidate. Although the election statutes have been with us for many years, at least as early as 1858, unfortunately none of them, including the latest version, enacted in 1972, have had much if anything to say about the contest of an election for the adoption or rejection of a question, such as we have at issue in the case before us. As near as we have been able to determine the only mention in Title 2, Chapter 17, referring to contested elections, is to be found in Part 101(b), which we have recited heretofore. It is certainly not a quo warranto action as suggested by so many of the cases. T.C.A. § 29–35–108, dealing with quo warranto proceedings, specifically states that the validity of any election which may be contested under this Code cannot be tried under the provisions of Title 29, Chapter 35. The election in this case was found by the chancellor to be void, as it undoubtedly was. The eight votes cast, but not counted, could have changed the outcome. An election void to an extent sufficient to change the result is void in toto. *Nelson v. Sneed*, 112 Tenn. 36, 83 S.W. 786 (1903).

The situation was well stated in *Maloney v. Collier, supra* 112 Tenn. at p. 101–102, 83 S.W. 667, "In short, the authorities referred to seem to establish most conclusively that, if acts in violation of the elective franchise cannot be redressed under the statutes which make provisions for contested elections, they cannot be redressed at all."

In *Lewis v. Watkins, supra*, the defeated candidate for sheriff undertook to test the election of the successful candidate on two distinct grounds. The first count of the declaration filed was predicated upon charges which, if sustained, would tend to establish the contestant's right to the office. The second count, however, was based solely on the constitutional ineligibility of the successful candidate. In its opinion by Mr. Justice William F. Cooper, the Court noted that the latter issue was a proper one under the election contest statutes. It was stated thusly:

"For, if the election be void, the contestant, *like any other citizen*, might offer legal opposition to a void election, at any rate where the contest is prompt, and before the induction of the defendant into the office. The provisions of the Code seem to contemplate this as one of the grounds of contest, and provides for the judgment in precisely such a case where the finding is in favor of the defendant on the question of election, but against him on the point of his legal or constitutional disqualification." 71 Tenn., p. 182. (Emphasis supplied).

The statute in question in *Lewis* contained a provision markedly similar to that set forth in T.C.A. § 2–17–113. *See Hatcher v. Bell*, 521 S.W.2d 799, 802 (Tenn.1974).

In *Zirkle v. Stegall*, 163 Tenn. 323, 43 S.W.2d 192 (1931), the only attack made on the election of Mr. Stegall was his disqualification to hold office. The suit was filed by citizens and taxpayers of Roane County, who made no claim to the office. In the suit, they sought to invalidate the election and to prevent the induction of Mr. Stegall to the office of Justice of the Peace on the sole ground that he was a defaulter and was ineligible to hold office under the Constitution of the State of Tennessee. This Court held that the suit was an election contest, and that the County Judge had jurisdiction to try the issue. In doing so, the Court, in the opinion by Chief Justice Grafton Green, stated:

"In two cases this court has said that a suit to prevent the induction of a defaulter into office or *to invalidate an election* may be prosecuted either by the incumbent of that office *or by any other citizen.* *Marshall v. Kerns,* 32 Tenn. (2 Swan) 68; *Lewis v. Watkins,* 71 Tenn. (3 Lea) 174. We are aware that the observations have been alluded to as dicta in *Maloney v. Collier,* 112 Tenn. 78, 83 S.W. 667, but, none the less the statements were well considered *and have been accepted as law.* It was suggested in *Lewis v. Watkins, supra,* that a citizen offering legal opposition to a void election should act promptly, but the right of a citizen so to proceed was taken to be clear." 163 Tenn. p. 327, 43 S.W.2d 192. (Emphasis supplied).

Unquestionably, in the case sub judice the plaintiff had the right to proceed with the cause of action to contest the election as a private citizen.

■ The plaintiff has posed several issues. He asks whether the trial court erred in ruling that the "wheel tax" resolution adopted by the defendant was valid. We are of the opinion that T.C.A. § 5–8–102 is clear on that subject. Subsection (b) of the statute authorizes the county to levy the tax in accordance with its terms. That authority is limited by subsection (c)(2), providing for a petition by qualified voters to require an election on the question of whether or not the tax should be levied in accordance with the provisions of the Code Section. It appears that the election shall determine whether the tax levy shall be approved or rejected. In this case the election has been declared void. Another election must be held. Apparently by his order the trial judge allowed the county commission to continue collecting the monies levied under their initial resolution. The disposition of any such monies collected is a matter to be determined by that court on remand.

Issue Number 2 posed by the plaintiff, charging the trial court with error in ruling that the election was not illegal and in violation of statutory safeguards, is moot. The court voided the election in its order.

Presumably any illegalities alleged, if in fact they occurred, will be corrected if a further election on the question is held in accordance with the trial court's order.

Plaintiff questions the trial court's denial of his application for injunctive relief and payment of attorney fees incurred in filing the petition. Under the facts and circumstances of this case we conclude the chancellor did not err in denying the relief requested.

We affirm the judgment of the trial court in all respects. The cause is remanded for any future and further proceedings required in the premises. The costs on this appeal are adjudged against the defendants.

REID, C.J., and DROWOTA, DAUGHTREY and ANDERSON, JJ., concur.