*(Knoxville,* September Term, 1931.)

Opinion filed November 14, 1931.

H. M. CARR and R. H. WARD, for plaintiff in error.

O. T. TINDELL, ELMER EBLIN, J. F. LITTLETON, WILLIAM B. LADD and FRED G. HAGGARD, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The original petition in this case was filed by citizens and taxpayers in the County Court of Roane County

to prevent the induction of A. H. Stegall into the office of justice of the peace. The petition averred that Stegall was elected to that office on the face of the returns in the August, 1930, election. It was charged that he was a defaulter and ineligible under the constitution. Notice of this petition was served on Stegall and the petition was lodged with the county judge.

Before any hearing, however, Stegall was inducted into office. The county judge thereupon took the position that he was without jurisdiction to try the case after Stegall's induction. An appeal was prayed to the circuit court, which the county judge refused. Thereupon a petition for *certiorari* was filed seeking to bring the case from the county court to the circuit court for hearing. The writ of *certiorari* issued under the *fiat* of the circuit judge.

Demurrers were introduced and overruled and answer thereupon made by the defendant. There were two hearings in the circuit court. On the first hearing a judgment was rendered against the defendant. A new trial, however, was granted and, upon the second trial, judgment was rendered in defendant's favor. Their motion for a new trial having been overruled, the plaintiffs brought the case to this court.

The first insistence here is that the circuit court was without jurisdiction to hear this cause and it should be dismissed accordingly. The argument is that the suit was brought for the sole purpose of preventing the induction of defendant into office and, that defendant having been inducted into office before hearing, the case became a moot case even in the county court. That there was nothing in the case thereafter for any court to try. This is a mistaken idea, for in addition to a prayer

that the induction into office of defendant be stayed, the original petition also prays that the defendant be adjudged a defaulter to Roane County and that his election to the office of justice of the peace be adjudged void.

In two cases this court has said that a suit to prevent the induction of a defaulter into office or to invalidate an election may be prosecuted either by the incumbent of that office or by any other citizen. *Marshall v. Kerns,* 32 Tenn. (2 Swan), 68; *Lewis v. Watkins,* 71 Tenn. (3 Lea), 174. We are aware that the observations have been alluded to as dicta in *Maloney v. Collier,* 112 Tenn., 78, but, none the less the statements were well considered and have been accepted as law. It was suggested in *Lewis v. Watkins, supra,* that a citizen offering legal opposition to a void election should act promptly but the right of a citizen so to proceed was taken to be clear.

Even though a defendant has been inducted into an office, a suit to prevent his induction may go on to test the validity of the election in which he was chosen. *Lewis v. Watkins, supra.*

If defendant were a defaulter, his election was void under Article II, Section 25, of the Constitution, and Section 1069, Thompson's-Shannon's Code. *Hogan v. Hamilton County,* 132 Tenn., 654. In that case, also, it was pointed out, citing previous decisions, that a suit to declare ineligible to office the person having the highest number of votes in a particular election was an election contest for jurisdictional purposes.

The county judge has jurisdiction of an election contest over the office of justice of the peace as distinguished from the quarterly county court. *Brown v.*

*Hows,* 163 Tenn., 138 (Advance Sheets), 40 S. W. (2d) 1017.

So, upon authority of the cases referred to, the County Judge of Roane County had jurisdiction to proceed with the hearing of this case, notwithstanding defendant's induction into office. Having declined to hear the case and declined to allow an appeal to the circuit court, the plaintiffs were without redress save by *certiorari* and we think that writ was properly granted by the circuit judge and the case brought to that court for hearing. The writ sought was the statutory writ of *certiorari* which opened up the case for a hearing *de novo* in the circuit court.

As to the review in this court, it will be as in any other case at law. This matter was fully considered in *Brown* v. *Hows, supra,* and insofar as *Moore* v. *Sharp,* 98 Tenn., 491, and *Shields* v. *McMahan,* 112 Tenn., held that contested election cases coming up from the circuit court were entitled to a hearing *de novo* in this court, those decisions were expressly overruled.

And, as in other law cases, only those matters brought to the attention of the court below in a motion for new trial can serve as the bases of assignments of error here. This precludes consideration of many of the assignments of error in the case before us.

The motion for a new trial herein was sought on grounds falling into three classes.

First, that a new trial should be granted on account of newly-discovered testimony, absent witnesses, etc. The discretion of a trial judge in matters like these is broad and we could not interfere with the exercise of this discretion by the court below on the showing made here. The affidavits do not disclose sufficient diligence on the part of plaintiffs below. As stated above, this case

was tried twice in the circuit court and it seems to us that had plaintiffs made sufficient effort they might have procured on the hearing this testimony, to present which they seek a new trial.

Second, that a new trial should be granted because the court below failed to charge defendant with certain fines, etc., alleged to have been collected by him and not turned over to the county. The defendant denied the receipt of such fines and his denials in some instances had support. The findings of the trial judge in favor of defendant on these controverted questions of fact, being sustained by some proof, are conclusive here.

Third, that a new trial should be granted because defendant was not charged with certain fines which he might have collected but failed to collect. Some of the fines, referred to just above, which the court below found defendant did not collect, are likewise mentioned in this connection.

The plaintiffs refer to certain sections of the Small Offenses Law. Section 6956, Thompson's-Shannon's Code, providing that "On conviction, the offender shall immediately pay the fine and costs, or give security to pay the same, or be imprisoned until the same are paid;" Section 6957 providing "One or more persons may become security for the fine and costs by oral undertaking before the justice of the peace, or by written direction to the justice, and an entry of judgment based thereon;" Section 6958 providing that "If the offender give such security, the justice shall forthwith issue execution against the offender and his surety for the fine and costs, returnable as other executions," and Section 6962 providing that "For a justice knowingly to take insufficient security for the fine and costs, is a misdemeanor in office."

Plaintiffs in error then refer to Section 6963, Thompson's-Shannon's Code, as follows:

"Every justice of the peace, sheriffs and constables, mayors and recorders in the state, shall execute bond, with good security, to the clerk of the county court, to be approved by the judge or chairman of said court, payable to the state, renewable biennially, in the penalty of five hundred dollars, conditioned to pay to the trustee of the county every fine received or collected, or which might have been received or collected, by him under the provisions of this chapter."

The argument is that the proof shows a violation of Section 6956 and Section 6958, above quoted, in several cases. That by the observance of those sections, the defendant might have received or collected fines which he has not received nor collected; and that by reason of Section 6963 defendant is accountable or liable to the county to the extent of these fines.

Section 25 of Article II of the Constitution is in these words:

"No person who heretofore hath been, or may hereafter be, a collector or holder of public moneys, shall have a seat in either house of the general assembly, or hold any other office under the state government, until such person shall have accounted for, and paid into the treasury, all sums for which he may be accountable or liable."

Except the clause "or hold any other office under the state government," this was in the Constitution of 1834.

Section 1069, Thompson's-Shannon's Code, is as follows:

"All males of the age of twenty-one years who are citizens of the United States and of this state, and have

been inhabitants of the state, county, district, or circuit the period required by the constitution and the laws of the state, are qualified to hold office under the authority of this state, except:

. . . . . .

"(4) Same.—Those who are defaulters to the treasury at the time of the election, and the election of any such person shall be void."

While the language of Article II, Section 25, of the Constitution might originally have received a broader construction, the legislature years ago, as seen from subsection (4) of Section 1069, Thompson's-Shannon's Code, above quoted, construed the constitutional provision as rendering defaulters ineligible to office. This interpretation has been accepted by the profession and the people. It has not been supposed that a mere civil liability of one to the public treasury, there being no defalcation, embezzlement, or like offense, would render one ineligible to hold public office.

A defaulter is "one who fails to account for money or property intrusted to his care; a defalcator; an embezzler." Webster's International Dictionary.

A defaulter is "one who misappropriates money held by him in an official or fiduciary character, or fails to account for such money." Black's Law Dictionary.

We think a collector or holder of public moneys who ignorantly or carelessly, generally speaking, fails to collect money which should go to the public treasury, while accountable and liable civilly, together with his bondsmen, is not accountable and liable in the sense of Section 25 of Article II so as to render him ineligible to office.

For the reasons stated, the judgment below is affirmed.