Abe **HATCHER**, Appellant,

v.

Henry Denmark **BELL**, Appellee.

Supreme Court of Tennessee.

Dec. 5, 1974.

Rehearing Denied Dec. 24, 1974.

Wayne S. Taylor, James R. Omer, Omer, Taylor, Ellis & Brabson, H. Francis Stewart, Stewart & Estes, Nashville, for appellant.

Ward DeWitt, Jr., Wilson N. West, Nashville, for appellee.

## OPINION

COOPER, Justice.

This appeal is from a decree holding void an election for judicial office and declaring the office vacant from and after the expiration of the judicial term ending on the 31st day of August, 1974.

Henry Denmark Bell and Abe Hatcher were candidates for the office of Judge of Division 1 of the Seventeenth Judicial Circuit of the State of Tennessee in the election held on August 1, 1974. Mr. Hatcher received the majority of the votes cast for the office and the results were properly certified by the County Election Commissioners on August 5, 1974. Within the statutorily designated ten (10) day period for the filing of an election contest, Henry Denmark Bell filed a complaint seeking to have the court declare (1) that Abe Hatcher was not eligible to hold the office under the Constitution of the State of Tennessee, and (2) that the election held on August 1, 1974, was void.

Specifically, Mr. Bell charged that Abe Hatcher had not been a resident of the State of Tennessee for five years before his election as required by Article 6, Section 4 of the Constitution of the State of Tennessee and, consequently, was disqualified from holding the office to which he was elected.

In answer the defendant denied that he had failed to comply with the residence re-

quirements set forth in the Constitution and denied the charge that he was constitutionally ineligible to hold the office to which he had been elected. The defendant also plead estoppel and the further defense that the complaint failed to state a claim under which the relief sought could be granted. Under the latter plea, the defendant raised the question of plaintiff's standing to bring the suit.

On trial of the issues by oral testimony, the chancellor found that Mr. Hatcher had not met the residence requirement set forth in the Tennessee Constitution and, consequently, was disqualified from holding the office of Judge of Division 1 of the Seventeenth Judicial Circuit. The chancellor then entered a decree declaring the election void and the office vacant as of the end of the judicial term. The chancellor also enjoined Mr. Hatcher from taking the oath of office.

Mr. Hatcher appealed, insisting the chancellor erred in holding that Mr. Bell had standing to bring a suit which questioned the constitutional qualifications of a successful candidate for public office. The appellant also challenged the chancellor's interpretation of the residence requirement set forth in the Constitution, and his finding that Mr. Hatcher, in fact, did not meet that requirement. Further, appellant insists the chancellor erred in holding that Mr. Bell was not estopped from bringing the suit.

The machinery for the contest of an election is set out in T.C.A. Sections 2–1701 through 2–1716. The provisions pertinent to the issues in this case are as follows:

"2–1701. *Jurisdiction of Chancery Courts.*—Who may contest. . . .
"The incumbent office holder and any candidate for the office may contest the outcome of an election for the office.
. . .

"2–1705. *Time for filing complaint.*—The complaint contesting an election under § 2–1701 shall be filed within ten (10) days after the election.

"2–1712. *Judgment in election contests.*—After hearing the case the court shall give judgment either:

(a) Confirming the election; or

(b) Declaring the election void; or
. . .

"2–1713. *Election declared void.*—If the person whose election is contested is found to have received the highest number of legal votes, but the election is declared null by reason of constitutional disqualifications on his part or for other causes, the election shall be declared void."

The appellant concedes that under these code sections, Mr. Bell is a proper party to contest the election. Appellant insists, however, that the suit filed is not an election contest in that it questions only the qualifications of appellant to hold the office to which he was elected. The thrust of appellant's argument is that a suit, to be an election contest, must in some manner assail "the validity or integrity of the election process, and that the plaintiff make some claim to the office."

There is no question but that a suit which attempts to go behind the election returns, to recount the votes or otherwise assail the manner and form of the election is an election contest. See State v. Dunn, 496 S.W.2d 480 (Tenn.1973); State v. Sensing, 188 Tenn. 684, 222 S.W. 2d 13 (1949). But an election contest is not limited to an attack on the integrity of the election process, nor is it limited to an attack by a candidate who makes claim to the office. A valid election to a public office impliedly contemplates that the party elected can legally hold the office to which he is elected. It would border on the absurd to say that a person who receives the highest number of votes in an election, but who cannot legally hold or occupy such office is or can be legally elected to the of-

fice. As we read T.C.A. Sections 2–1701 and 2–1713 set out above, a contest challenging the validity of an election upon the constitutional disqualification of the candidate receiving the highest number of votes in the election under attack is contemplated and authorized. Further, this court has approved the testing of the validity of an election in a suit predicated upon the constitutional disqualification of the winning candidate. Zirkle v. Stegall, 163 Tenn. 323, 43 S.W.2d 192 (1930); Lewis v. Watkins, 71 Tenn. 174 (1879).

In Lewis v. Watkins, supra, the defeated candidate for sheriff undertook to test the election of the successful candiate on two distinct grounds. The first count of the declaration filed was predicated upon charges which, if sustained, would tend to establish the contestant's right to the office. The second count, however, was based solely on the ineligibility of the successful candidate "because a defaulter to the State on the day of the election, for public revenue collected by him as a tax collector . . . ." This court held, in an opinion by Mr. Justice Cooper, that the latter issue was a proper issue under the election contest statutes, which contained a provision markedly similar to that set forth in T.C.A. § 2–1713. In doing so, the court stated:

"For, if the election be void, the contestant, like any other citizen, might offer legal opposition to a void election, at any rate where the contest is prompt, and before the induction of the defendant into the office. The provisions of the Code seem to contemplate this as one of the grounds of contest, and provides for the judgment in precisely such a case where the finding is in favor of the defendant on the question of election, but against him on the point of his legal or constitutional disqualification."

In Zirkle v. Stegall, 163 Tenn. 323, 43 S.W.2d 192 (1930), the only attack made on the election of Mr. Stegall was his disqualification to hold office. The suit was filed by citizens and taxpayers of Roane County, who made no claim to the office. In the suit, they sought to invalidate the election and to prevent the induction of Mr. Stegall into the office of Justice of the Peace on the sole ground that he was a defaulter and was ineligible to hold office under the Constitution of the State of Tennessee. This court held that the suit was an election contest, and that the county judge had jurisdiction to try the issues. In doing so, the court stated through Chief Justice Grafton Green that:

"In two cases this court has said that a suit to prevent the induction of a defaulter into office or to invalidate an election may be prosecuted either by the incumbent of that office or by any other citizen. Marshall v. Kerns, 32 Tenn. (2 Swan) 68; Lewis v. Watkins, 71 Tenn. (3 Lea) 174. We are aware that the observations have been alluded to as dicta in Maloney v. Collier, 112 Tenn. 78, 83 S.W. 667, but, none the less the statements were well considered and have been accepted as law. It was suggested in Lewis v. Watkins, supra, that a citizen offering legal opposition to a void election should act promptly, but the right of a citizen so to proceed was taken to be clear.

"Even though a defendant has been inducted into an office, a suit to prevent his induction may go on to test the validity of the election in which he was chosen. Lewis v. Watkins, supra.

"If defendant were a defaulter, his election was void under article 2, § 25, of the Constitution, and section 1096, Thompson's-Shannon's Code. Hogan v. Hamilton County, 132 Tenn. 554, 179 S. W. 128. In that case also it was pointed out, citing previous decisions, that a suit to declare ineligible to office the person having the highest number of votes in a particular election was an election contest for jurisdictional purposes."

Appellant has cited us to several cases where this court has approved the

bringing of a quo warranto action to challenge the eligibility of a successful candidate to hold the office to which he was elected. See State v. Sensing, 188 Tenn. 684, 222 S.W.2d 13 (1949); Bickford et al. v. Swafford, 194 Tenn. 381, 253 S.W.2d 557 (1952); State v. Dunn, 496 S.W.2d 480 (Tenn.1973). We have no quarrel with these decisions. However, there is no basis in reason why the same circumstance —that is, the constitutional disqualification of the candidate receiving the highest number of votes in an election—can not be the predicate of an election contest as well as a quo warranto proceeding, depending on the party filing, the ultimate purpose of the proceeding, and the time of filing. The circumstance, if proven, would be determinative of the validity of the election, which is the target of an election contest. It also would be determinative of the right of the successful candidate to hold the office to which he is elected, the target of a quo warranto proceeding. The election contest statute gives to the unsuccessful candidate the right to contest the validity of the election by suit filed within ten days of the election, without limitation to any specific ground or grounds of contest. We are not inclined to restrict judicially the grounds of contest to eliminate therefrom a challenge to the validity of an election predicated on the constitutional disqualification of the successful candidate at the time of election. To do so would leave the unsuccessful candidate without any effective remedy by which he might challenge the validity of the election. Cf. Slater v. Varney, 136 W.Va. 406, 68 S.E.2d 757 (1951).

■ We hold, therefore, that an election contest is a proper proceeding to test the validity of an election on the charge that the candidate receiving the highest number of votes cast in the election has not complied with the residence requirement set forth in the Constitution and was ineligible on the day of the election to hold the office; and that the appellee, being a candidate in the election, is a proper party to institute the proceeding.

This brings us to the question: What is the pre-election residence requirement to be met by a candidate for the office of Circuit Judge of the State of Tennessee?

Article 6, Section 4 of the Constitution provides:

"Sec. 4. *Judges of inferior courts.*— The Judges of the Circuit and Chancery Courts, and of other inferior Courts, shall be elected by the qualified voters of the district or circuit to which they are to be assigned. Every Judge of such Courts shall be thirty years of age, and *shall before his election, have been a resident of the State for five years* and of the circuit or district for one year. . . . " (Emphasis supplied.)

The chancellor interpreted the foregoing provision to require a candidate for judicial office to have been a resident of Tennessee for a term of five years immediately preceding the election. The appellant contends this was error, that the residence requirement set forth in the Constitution can be met by residence in this State for a period of five years at any time prior to the election.

■ The fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent and purpose of those who adopted it. And if the language used is clear and unambiguous, the meaning and intent of the provision is to be ascertained from the instrument itself by construing the language as it is written. Shelby v. Hale, 200 Tenn. 503, 292 S.W.2d 745 (1956); 16 C.J.S. Constitutional Law § 19, p. 81.

■ We agree with the chancellor that a fair reading of the residence requirement of the Constitution leaves no doubt but that a candidate for judge is required to have been a legal resident of the State for the five year period immediately preceding the election. The purpose of a residence requirement is to insure the voters the opportunity to become acquainted with the candidate's ability, character, personality,

and reputation and, secondarily, to ensure that the candidate have the opportunity to know the customs and the mores of the people. This was the "compelling state interest" found to support the constitutionality of the residence requirement for circuit judges set forth in the Constitution of our sister State of Alabama. See Hadnott v. Amos, 320 F.Supp. 107 (M.D.Ala.1970), aff'd without opinion, 401 U.S. 968, 91 S. Ct. 1189, 28 L.Ed.2d 318 (1971), wherein the Court says:

> "We consider it to be of urgent importance that the voter have an opportunity to observe, learn about and apprise those who seek to be candidates for a key judicial office that touches important events and relationships of their lives and of the community in which they live."

The purpose would be defeated and the residence requirement emasculated and of no effect if, as urged by appellant, the residence requirement could be satisfied by residence in this State at any point in time without reference to the election, except that it be before the election. As pointed out by appellee in his brief, "under the construction urged by defendant, a child who was born in Tennessee and lived in Tennessee for five years could then move to South Africa and live there continuously for forty years and be eligible to run for circuit judge or chancellor in Tennessee without even returning to Tennessee for the campaign. Article 6, Section 4, so interpreted, would be frivolous."

■ Appellant also takes issue with the chancellor's finding that appellant had not been a resident of Tennessee for the requisite five year period immediately preceding the election. It was appellant's theory in the trial court and now in this court "that he never surrendered his Tennessee residency, that he became a resident of Alabama, of Sullivan County, Tennessee, of New York, of Massachusetts, and of course, of Pennsylvania by virtue of pursuing his profession, but at all times retained his intention to return to the state of his 'legal residence,'" Tennessee.

The difficulty the chancellor had, and this court has, with appellant's contention lies in the fact that his intention to return to Tennessee "is evidenced only by his declaration made in hindsight to that effect." As evidence of a contrary intent, the record shows that appellant moved his family to Pennsylvania in 1967 and remained there until 1972 when he moved to Williamson County, Tennessee. He purchased a home in Pennsylvania. He practiced his profession in Pennsylvania. Further, in 1968, he registered to vote in Pennsylvania and, in doing so, declared upon oath he was a resident of Pennsylvania. The chancellor concluded from this evidence that Mr. Hatcher was a bona fide legal resident of the State of Pennsylvania from 1967 to 1972. We cannot say the evidence preponderates against the chancellor's finding.

■ In the remaining assignment of error, the appellant insists the chancellor erred in failing to hold that appellee "was estopped from instituting the instant proceedings." There is no discussion of this assignment in appellant's brief, except for the closing statement that it is "the conclusion of the defendant that the plaintiff estopped himself from instituting this action by the actions taken by him as County Attorney for Williamson County, Tennessee, and his subsequent actions acquiesing in the results of the election all to the Plaintiff's detriment." We find no evidence in the record to support or justify this conclusion.

The judgment of the chancellor is affirmed. Costs are adjudged against the appellant, Abe Hatcher, and his surety.

The clerk will forward to the Governor of the State of Tennessee a certified copy of the judgment of the chancellor, as affirmed by this court, holding void the election of August 1, 1974, for the office of Judge of Division 1 of the Seventeenth Ju-

dicial Circuit and declaring the office vacant from and after August 31, 1974.

FONES, C. J., and BROCK and HENRY, JJ., concur.

HARBISON, J., not participating.

OPINION ON PETITION TO REHEAR

COOPER, Justice.

Abe Hatcher has filed a petition to rehear insisting "the Court overlooked certain important points which would require reversing the Court's opinion, and, also to cite additional authority." Specifically, Mr. Hatcher questions (1) the constitutionality of the residence requirement for circuit judges set forth in Article 6, Section 4, of the Tennessee Constitution, (2) the validity of this court's reliance on the cases of Lewis v. Watkins, 71 Tenn. 174 (1879), and Zirkle v. Stegall, 163 Tenn. 323, 43 S.W.2d 192 (1930), cited in the opinion in this case, and (3) the validity of this court's interpretation of the pre-election residence requirement for circuit judge as set forth in the Constitution of this State.

▪ The purpose of a petition to rehear is to call this court's attention to decisive authority not considered by this court in making its decision, not to reargue the case on points already considered by the court. Abernathy v. Chambers, 482 S.W. 2d 129 (Tenn.1972). Grounds two and three were fully argued before this court on appeal. Counsel has cited us to no new decisive authority on these issues, nor to any authority, new or old, which this court did not consider in making its decision in this case.

▪ As to ground one of the petition, this is the first time in this litigation that petitioner has suggested the residence requirements for candidates for circuit judge set forth in the Tennessee Constitution is itself unconstitutional. Petitioner now insists that to require a period of residence longer than the two-year period petitioner resided in this state prior to the election "is unconstitutional as contrary to the compelling state interest of Tennessee and petitioner's basic constitutional right of interstate travel protected by the U.S.C.A. Const. Amend. 14." In support of this insistence, petitioner has cited us to Gilbert v. State, 526 P.2d 1131 (Alaska 1974), wherein that court *upheld* a requirement that candidates for the state legislature reside in the State or Alaska for three years and in the community the candidate seeks to represent for one year prior to the election. Petitioner reasons from this that if a three year residence requirement is reasonable for a state legislator in Alaska, it is unreasonable for the State of Tennessee to require more than two years residence of a candidate for judicial office. We cannot accept this reasoning. As pointed out in our opinion in this case, "the purpose of a residence requirement is to insure the voters the opportunity to become acquainted with the candidate's ability, character, personality, and reputation and, secondarily, to ensure that the candidate have the opportunity to know the customs and the mores of the people." We find nothing in this record or in the argument of petitioner to lead us to the conclusion that the five year resident requirement for candidates for circuit judge is unreasonable to accomplish this purpose.

Petition denied. Costs will be adjudged against the petitioner and his surety.

FONES, C. J., and BROCK and HENRY, JJ., concur.

HARBISON, J., not participating.