IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 18, 2015 Session

**RANDY R. MOSS, JR. v. DAN P. EVANS, ET AL.**

**Appeal from the Chancery Court for McMinn County**
**No. 2014CV285     Jeffrey M. Atherton, Chancellor**

---

**No. E2014-02277-COA-R3-CV-FILED-JULY 16, 2015**

---

This appeal arises from an election contest.  Randy R. Moss, Jr. ("Moss") ran against Dan P. Evans ("Evans") for the office of Chief Administrative Officer of the McMinn County Highway Department ("Highway Commissioner").  Evans won.  Moss filed an election contest in the Chancery Court for McMinn County ("the Trial Court") challenging Evans' statutorily required qualifications to hold the office.  Moss also sued the McMinn County Election Commission and its officials ("the Election Commission," collectively) in the same action.  Evans and the Election Commission filed motions to dismiss.  The Trial Court granted the motions to dismiss, holding that Moss was required to have challenged Evans' certification as a qualified candidate before the Tennessee Highway Officials Certification Board ("the THOCB") and that Moss could not now challenge Evans' qualifications by an election contest.  Moss filed this appeal.  We affirm the Trial Court in its dismissing the complaint against the Election Commission, which acted only in a ministerial capacity.  We hold, however, that the Trial Court erred in concluding that it had no jurisdiction to hear Moss's challenge to Evans' qualifications.  We affirm, in part, and, reverse, in part, the judgment of the Trial Court, and remand this case to proceed against defendant Evans.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed, in Part, and, Reversed, in Part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Jimmy W. Bilbo and Brent McIntosh, Cleveland, Tennessee, for the appellant, Randy R. Moss, Jr.

James F. Logan, Jr., Cleveland, Tennessee, for the appellee, Dan P. Evans.

Vance L. Baker, Jr., Athens, Tennessee, for the appellees, McMinn County Election Commission, Kris Williams, Amber Robinson, Bobby Goodman, Becky Riley, Todd Watson, and Brenda Ratledge.

**OPINION**

**Background**

This action arose out of the August 2014 election for the office of McMinn County Highway Commissioner. Republican Evans defeated Democrat Moss by a total of 5,341 votes to 2,901. Moss brought this action pursuant to Tenn. Code Ann. § 2-17-101 *et seq.* as an election challenge seeking to have either the election voided or Moss declared the winner. Moss alleged that Evans lacked the necessary statutory qualifications to hold the post. Moss sued both Evans and the Election Commission, and its officials.

Tenn. Code Ann. § 54-7-104(g) contains a number of requirements that a candidate must meet in order to hold the office of Highway Commissioner. As relevant to this case, Evans is alleged to lack the requisite four years of experience in a supervisory capacity in highway construction or maintenance. The THOCB, a body created by statute, is empowered to issue the certifications for Highway Commissioner candidates. Tenn. Code Ann. § 54-7-104(g) also provides for Guidelines to be promulgated regarding the certification of candidates. These Guidelines, contained in the record, include a section devoted to challenges to a candidate's qualifications before the THOCB. The THOCB certified Evans as qualified.

According to Moss, Evans was unqualified to be Highway Commissioner, and the election should be voided or Moss should be declared the winner. According to Evans and the Commission, Moss failed to challenge the certification in the THOCB, and he may not now tardily revisit the issue of Evans' certification as qualified. The defendants filed motions to dismiss. The Trial Court granted the motions to dismiss, finding that the THOCB was the exclusive arbiter of certification for Highway Commissioner qualification and that the Trial Court lacked jurisdiction to, in effect, go around the THOCB. In its October 2014 order, the Trial Court stated as follows, in part:

> Insofar as the Motions seeks a dismissal based upon Rule 12.02(6) for failure to state a claim upon which relief can be granted, the Court finds that the Complaint states a claim upon which relief can be granted because the Complaint alleges that Evans did not meet the qualifications to qualify for the Office of Chief Administrator of the Highway Department of McMinn County; however, the Court finds that for the purposes of this

-2-

particular case the motions to dismiss are granted. This Court finds that the eligibility to determine whether a candidate may or may not receive certification to run rests exclusively with the Tennessee Highway Official Certification Board. Once that certification issue came out, a contest of that certification has to go through the process and guidelines, which guidelines are in the record. The statute specifically identifying the Board authorizes the Board to establish those guidelines. Under the circumstances those guidelines were not followed for the purposes of calling into question the qualifications of Mr. Evans. Since the qualifications are where this lawsuit rises or falls, eligibility related to those qualifications is within the exclusive authority of the Tennessee Highway Official Certification Board. Thus, the Court does not have jurisdiction to reach the other issues.

Moss timely filed an appeal to this Court.

## Discussion

Although not stated exactly as such, Moss raises the following issue on appeal: whether the Trial Court erred in granting Evans' and the Election Commission's motions to dismiss on the basis that the only method for contesting the certification of an unqualified candidate for Highway Commissioner is through challenging the candidate's certification in the THOCB.

The Trial Court apparently granted the defendants' motions to dismiss on the basis that it lacked jurisdiction. In *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000), our Supreme Court set forth the standard of review when reviewing a motion to dismiss based on lack of subject matter jurisdiction. The Court stated:

> A motion to dismiss for lack of subject matter jurisdiction falls under Tennessee Rule of Civil Procedure 12.02(1). The concept of subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it. *See Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Standard Sur. & Casualty Co. v. Sloan*, 180 Tenn. 220, 230, 173 S .W.2d 436, 440 (1943). Subject matter jurisdiction involves the nature of the cause of action and the relief sought, *see Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994), and can only be conferred on a court by constitutional or legislative act. *See Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977); *Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 734 (Tenn. Ct. App. 1989). Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de

novo, without a presumption of correctness. *See Nelson v. Wal–Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

*Northland Ins. Co.*, 33 S.W.3d at 729.

The defendants argue that Moss was required to have challenged Evans' qualifications in this matter at the THOCB level. Their argument relies in large measure on the doctrine of exhaustion of administrative remedies. Broadly speaking, the doctrine of exhaustion of administrative remedies refers to the requirement that administrative remedies ordinarily must be pursued to their conclusion before any judicial process is initiated. However, case law reflects that the doctrine of exhaustion of administrative remedies is not applied mechanically. Our Supreme Court, in discussing the doctrine of exhaustion of administrative remedies and when it applies, wrote:

> When a statute provides for an administrative remedy, an aggrieved party must ordinarily exhaust the remedy before seeking to utilize the judicial process. *Thomas v. State Bd. of Equalization*, 940 S.W.2d 563, 566 (Tenn.1997); *Bracey v. Woods*, 571 S.W.2d 828, 829 (Tenn. 1978). In *Thomas*, this Court observed that the exhaustion of remedies doctrine allows an administrative body to "(1) function efficiently and have an opportunity to correct its own errors; (2) afford the parties and the courts the benefit of its experience and expertise without the threat of litigious interruption; and (3) compile a record which is adequate for judicial review." *Thomas*, 940 S.W.2d at 566. Nevertheless, unless the statute providing for an administrative remedy requires exhaustion "by its plain words," an administrative appeal is not mandatory. *Id.*; *see also Reeves v. Olsen*, 691 S.W.2d 527, 530 (Tenn. 1985). Absent a statutory mandate, the exhaustion of the administrative remedies doctrine is a matter of judicial discretion. *Thomas*, 940 S.W.2d at 566 n. 5; *Reeves*, 691 S.W.2d at 530; *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569, 577 (Tenn. Ct. App. 2005). When the issue of exhaustion is discretionary, "[t]his Court will not conclude that a trial court has abused its discretion unless the trial court 'applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.' " *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 237 (Tenn. 2010) (quoting *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)). A factor for consideration is whether judicial review would "prematurely interrupt the administrative process." *Moore*, 246 S.W.3d at 577-78. In any event, the exhaustion of an administrative remedy is not required when the party seeking judicial review presents questions of law rather than questions of

fact. *Bracey*, 571 S.W.2d at 830; *Fentress Cnty. Bank v. Holt*, 535 S.W.2d 854, 857 (Tenn. 1976).

*Ready Mix, USA, LLC v. Jefferson Cnty.*, 380 S.W.3d 52, 63-64 (Tenn. 2012).

As stated by our Supreme Court, the application of the doctrine of exhaustion of administrative remedies, depending on the circumstances, may be either mandatory when prescribed by statute, or, alternatively, lay within the sound discretion of the trial court. A recent federal opinion cogently discusses when the doctrine is discretionary rather than mandatory:

Accordingly, the initial question is whether the statute in question, by its plain words, makes administrative exhaustion mandatary before a party may sue in the courts. This is a simple task for some statutes. For instance, the workers' compensation injury statute provides that "[t]he parties to a dispute *shall* attend and participate in a benefit review conference that addresses all issues related to a final resolution of the matter as a *condition precedent* to filing a complaint with a court of competent jurisdiction, unless the benefit review conference process is otherwise exhausted pursuant to rules promulgated by the commissioner." § 50-6-239(b) (emphasis added). Courts have concluded from this language that "in order to obtain judicial review of the issue of compensability of an injury, the employer or insurer must wait until there has been an exhaustion of the benefit review conference process." *Tyson Foods ex rel. Gibson v. Tennessee Dep't of Labor & Workforce Dev., Workers' Comp. Div.*, No. M2010-02277-COA-R3CV, 2011 WL 4790980, at *3 (Tenn. Ct. App. Oct. 10, 2011) (citing Tenn. Code Ann. §§ 50-6-225(a)(2)(A) and 50-6-239(b)).

In *Reeves v. Olsen*, on the other hand, the Tennessee Supreme Court found that a tax statute did not make exhaustion mandatory because it "expressly authorizes alternative avenues of relief." 691 S.W.2d 527, 530 (Tenn. 1985) ( "Our reading of T.C.A. § 67-816 in its entirety leads us to the conclusion that the legislature intended that an election exist between the administrative remedy and immediate resort to the courts.").

The statute in the instant case, Tenn. Code Ann. § 56-5-309, falls somewhere between the workers' compensation injury statute in *Tyson Foods* and the tax statute in *Reeves*. Section 56-5-309 does not specifically state that completion of the administrative process is a "condition precedent" to filing a lawsuit as in *Tyson Foods*; nor does it specify other, non-administrative, avenues for relief as in *Reeves*. Instead, it provides that

"any person aggrieved by the application of [an insurer's] rating system *may* be heard on written request to review the manner in which the rating system has been applied in connection with the insurance afforded." § 56-5-309(b) (emphasis added). If the party is still unsatisfied after that review, it "*may*, within thirty (30) days after written notice of the action, appeal to the commissioner ...." *id*. (emphasis added). Compare this to the mandatory language in the *Tyson Foods* statute: "[t]he parties to a dispute *shall* attend and participate in a benefit review conference that addresses all issues related to a final resolution of the matter as a *condition precedent* to filing a complaint with a court of competent jurisdiction ...." § 50-6-239(b) (emphasis added).

\*\*\*

Ultimately, the Court cannot conclude § 56-5-309 contains a hard-and-fast requirement that parties exhaust administrative remedies before filing suit. Although Defendants are correct that the statute and related regulations set up a system for the administrative resolution of workers' compensation premium disputes, Defendants point to no case holding that § 56-5-309 *requires* a party exhaust administrative remedies before filing suit. Furthermore, the statute does not by its plain words make exhaustion mandatory. *See Ready Mix*, 380 S.W.3d at 63-64. Rather, the statute provides that a party "may" avail itself of that process and "may" appeal to the Commissioner. These words do not indicate that exhausting such procedures is a condition precedent to filing suit. That the statute requires insurers to set up a dispute resolution process does not render it the sole avenue for relief. Accordingly, because § 56-5-309 does not require exhaustion by its plain words, the Court cannot conclude Valley was required to exhaust its administrative remedies in Tennessee before suing in relation to its Tennessee workers.

*Valley Mechanical, Inc. v. BB & T Services, Inc.*, 2014 WL 2871475, at \*\*6-7 (E. D. Tenn. June 24, 2014).

In order to determine whether the doctrine of exhaustion of administrative remedies is mandatory or discretionary in the present case, we must review the statutes and rules governing this case. Tenn. Code Ann. § 54-7-104, which establishes the THOCB, provides:

(a) There is created and established the Tennessee highway officials certification board, referred to as the "board," which shall be composed of five (5) members as follows:

(1) One (1) member appointed by the secretary of state;

(2) One (1) member appointed by the director of the Tennessee Chapter of the American Public Works Association;

(3) One (1) member appointed by the governor from a list of nominees submitted by the representative professional engineering society of the state;

(4) One (1) member appointed by the comptroller of the treasury; and

(5) One (1) member appointed by the executive director of the Tennessee County Services Association.

(b) The board has and shall exercise the power to review the qualifications of all candidates for both elected and appointed positions as chief administrative officer of the highway department. Candidates for this office in counties where the position is filled by popular election shall file affidavits and other evidence the board requires with the board not later than fourteen (14) days prior to the qualifying deadline for candidates in the election. After review of the applicable qualifications and standards, the board shall certify to the coordinator of elections that a candidate's qualifications are acceptable prior to the candidate's name being placed on the ballot. The coordinator of elections shall forward the certification to the appropriate county election commission. A certificate of qualification from the board shall be filed with the candidate's qualifying petition prior to the qualifying deadline. Notwithstanding any law to the contrary, votes for write-in candidates, whether in a primary or general election, shall only be counted for an individual who has been certified by the board prior to the date of the election. Persons wishing to receive a party nomination or to be elected by write-in ballot must file with the board affidavits and other evidence the board requires not later than sixty-four (64) days prior to the election. Candidates for chief administrative officer of the highway department in counties where the position is appointed shall, prior to their appointment to the office, file with the board evidence satisfactorily demonstrating that they meet the qualifications to hold the office. However, in any county, pursuant to subsection (h), that has established by private act

more stringent qualifications and standards than those set forth in subsection (g), and that has an appointed chief administrative officer, candidates shall submit evidence of their qualifications to the local appointing authority and shall not be required to submit evidence of their qualifications to the board.

(c) Members of the board shall serve for a term of four (4) years beginning with the term commencing on July 1, 2013. The appointee representing the secretary of state shall serve as chair of the board. Upon the death, resignation, or removal of any appointive member, a replacement shall be appointed by the party representing the same area of interest as the member whose position has been vacated to fill the unexpired term of the member.

(d) No chief administrative officer of a highway department shall be appointed to the board if that person may become subject to reelection or reappointment as a chief administrative officer during that person's term of service on the board.

(e) The board shall only meet as is necessary to fulfill its duties. All materials or correspondence submitted to the board shall be received through the office of the coordinator of elections, who shall forward the materials or correspondence to the board. The board shall keep complete and accurate records of the proceedings of all its meetings. A copy of records of all proceedings shall be kept on file in the office of the coordinator of elections and open to public inspection.

(f) Subject to the approval of the secretary of state, the board may promulgate rules to be followed by persons wishing to submit themselves for certification as qualified to seek the office of the chief administrative officer of the highway department. The board shall submit any promulgated rules pertaining to the qualifications for the office of chief administrative officer to the administrator of elections of each affected county election commission. The county election commission shall publish such rules in a local newspaper with general circulation in the county at least sixty (60) days before the qualifying deadline for either the primary or general election, or appointment by the legislative body of the county.

(g) In each county, in order to qualify for the office of the chief administrative officer of the highway department, a person shall:

(1) Be a graduate of an accredited school of engineering, with at least two (2) years of experience in highway construction or maintenance;

(2) Be licensed to practice engineering in Tennessee; or

(3) Have had at least four (4) years' experience in a supervisory capacity in highway construction or maintenance; or a combination of education and experience equivalent to subdivision (g)(1) or (g)(2), as evidenced by affidavits filed with the board.

(h) In no event shall the chief administrative officer have less than a high school education or a general equivalency diploma (GED). A county may, by private act, require more stringent qualifications and standards than those set forth in subsection (g) for persons to qualify for the office of the chief administrative officer of such highway department. Any county that establishes more stringent qualifications and standards by private act shall send a copy of such private act to the board.

(i) Incumbent chief administrative officers in office on December 31, 2012, who have met the qualifications for the office of chief administrative officer applicable to them in effect at the time of their last election shall be able to succeed themselves in office without meeting the qualifications set forth in this section for as long as such incumbents continuously hold office. If such incumbent leaves office for any reason and then subsequently is elected or appointed to the office of chief administrative officer, such incumbent shall then be subject to the qualifications set forth in this section.

(j) Satisfactory evidence of graduation from an accredited school of engineering shall be in the form of a diploma, transcript or other official documentation. Evidence of a candidate's engineering licensure shall only be deemed to be satisfied if the candidate can provide the board with a copy of the candidate's engineering license, including the candidate's license number. Any provision in this section requiring a chief administrative officer to have a high school diploma or GED shall only be deemed to be satisfied if the candidate can demonstrate that the candidate has obtained a high school diploma or its equivalent in educational training as recognized by the state board of education by providing the board with the candidate's diploma, GED certificate or other official documentation.

Tenn. Code Ann. § 54-7-104 (Supp. 2014).

Nowhere does the statute require that challenges to a candidate's certification must go exclusively through the THOCB. We next turn to the relevant Guidelines promulgated by the board pursuant to the statute:

V.     **Challenge Process**
A.     The board will accept affidavits from persons who dispute the qualifications of a candidate. Such affidavits must be based upon first-hand knowledge and sworn to and signed before a notary public or other person authorized by law to administer oaths.
B.     The board shall hold public hearings and accept testimony and other evidence to determine the qualifications of a candidate when the board determines that there is a legitimate dispute as to the qualifications of the candidate.
C.     Any challenge must be filed at least three (3) days prior to the meeting at which a candidate's qualifications are to be reviewed. If a challenge is filed less than three (3) days prior to the meeting at which a candidate's qualifications are to be reviewed, the candidate and challenge shall be moved to the next available agenda.
D.     Challenges filed against candidates on the board's final agenda prior to the qualifying deadline must be filed at least one (1) day prior the meeting at which the candidate's qualifications are to be reviewed.

As with the statute authorizing the adoption of the Guidelines, we find nothing in the plain language of the Guidelines making a challenge in the THOCB the exclusive route for challenging a candidate's certification. The Trial Court, therefore, erred in concluding that it lacked jurisdiction to hear Moss's election contest. Rather, the Trial Court should have exercised its discretion to determine whether or not to apply the doctrine of exhaustion of administrative remedies to bar Moss's suit.

One option now available to this Court would be to remand this case with instructions for the Trial Court to take the applicable law into account and exercise its discretion. However, in the interests of an expeditious resolution of this case of public importance, we will exercise our own discretion in the matter. To do so, we must review whether it is appropriate to apply the doctrine of exhaustion of administrative remedies under these circumstances.

Moss timely filed an election contest pursuant to statute. Tenn. Code Ann. § 2-17-101(b) (2014) provides: "The incumbent office holder and any candidate for the office may contest the outcome of an election for the office." Tenn. Code Ann. § 2-17-105 (2014) provides further that: "The complaint contesting an election under § 2-17-101

shall be filed within five (5) days after certification of the election." Regarding outcomes, Tenn. Code Ann. § 2-17-112 (2014) provides:

(a) After hearing the case, the court shall give judgment either:

(1) Confirming the election;

(2) Declaring the election void;

(3) Declaring a tie between persons who have the same number of votes if it appears that two (2) or more persons who have the same number of votes have, or would have had if the ballots intended for them and illegally rejected had been received, the highest number of votes for the office; or

(4) Declaring a person duly elected if it appears that such person received or would have received the highest number of votes had the ballots intended for such person and illegally rejected been received.

(b) A judgment under subdivision (a)(4) deprives the person whose election is contested of all right or claim to the office and invests the person declared by the judgment duly elected with the right to the office.

Tenn. Code Ann. § 2-17-113 (2014) states: "If the person whose election is contested is found to have received the highest number of legal votes, but the election is declared null by reason of constitutional disqualifications on that person's part or for other causes, the election shall be declared void."

This case is not about voting irregularities. Instead, this is an election contest challenging the statutorily required qualifications of the winning candidate to hold the office to which he was elected. In 1974, our Supreme Court discussed the appropriateness of using election contests to challenge a winning candidate's election on the basis of his or her lack of qualifications:

There is no question but that a suit which attempts to go behind the election returns, to recount the votes or otherwise assail the manner and form of the election is an election contest. *See State v. Dunn*, 496 S.W.2d 480 (Tenn.1973); *State v. Sensing*, 188 Tenn. 684, 222 S.W.2d 13 (1949). But an election contest is not limited to an attack on the integrity of the election process, nor is it limited to an attack by a candidate who makes claim to the office. A valid election to a public office impliedly contemplates that the party elected can legally hold the office to which he is

-11-

elected. It would border on the absurd to say that a person who receives the highest number of votes in an election, but who cannot legally hold or occupy such office is or can be legally elected to the office. As we read T.C.A. Sections 2-1701 and 2-1713 set out above, a contest challenging the validity of an election upon the constitutional disqualification of the candidate receiving the highest number of votes in the election under attack is contemplated and authorized. Further, this court has approved the testing of the validity of an election in a suit predicated upon the constitutional disqualification of the winning candidate. *Zirkle v. Stegall*, 163 Tenn. 323, 43 S.W.2d 192 (1930); *Lewis v. Watkins*, 71 Tenn. 174 (1879).

*Hatcher v. Bell*, 521 S.W.2d 799, 801-02 (Tenn. 1974).

The Supreme Court thus has acknowledged favorably the use of an election contest as a means of challenging a winning candidate's qualifications and thus his or her ability to hold an office. Moss alleges that Evans cannot "legally hold the office to which he is elected." *Hatcher*, 521 S.W.2d at 801. Although here it is an alleged lack of statutory rather than constitutional qualifications, we believe the Supreme Court's reasoning and holding in *Hatcher* to be controlling. Our conclusion also is supported by Tenn. Code Ann. § 2-17-113 (2014) concerning an election contest where the winning candidate "received the highest number of legal votes, but the election is declared null by *reason of constitutional disqualifications on that person's part or for other causes*, the election shall be declared void." (Emphasis added) Tenn. Code Ann. § 2-17-113 (2014).

Nothing in our research, in either the statute creating the THOCB, the Guidelines promulgated by the board pursuant to statute, nor anything in the election contest statutes, supports the conclusion that the *exclusive* method of challenging a Highway Commissioner's certification is through proceedings in the THOCB. In our judgment, justice would not be furthered by the rote application of the doctrine of exhaustion of administrative remedies to this case. Evans' qualifications have been challenged in an election contest brought by Moss. While we take no position on the truth of Moss's allegations, these allegations bear directly on whether the August 2014 Highway Commissioner election result may stand. We do not believe the doctrine of exhaustion of administrative remedies, in the absence of any mandatory statutory language, should be applied to preclude a hearing on the merits of an issue so central to the integrity of an election result.

Our Opinion should not be construed to undermine the THOCB's statutorily-defined prerogative to decide on the certification of candidates for Highway Commissioner. The THOCB, along with its challenge processes and other components, is an independent scheme apart from the election contest statutes. However, unless our

General Assembly says otherwise, the existence of the former does not negate the availability of the latter.  In the exercise of our discretion, we decline to apply the doctrine of exhaustion of administrative remedies.  We reverse the judgment of the Trial Court in its grant of Evans' motion to dismiss, and remand this case to proceed against Evans.

Regarding the Election Commission and its officials, we hold that their role in this case was limited to a ministerial capacity.  *See City of Memphis v. Shelby County Election Com'n*, 146 S.W.3d 531, 536-37 (Tenn. 2004).  It is unreasonable to expect that the Election Commission could or should second-guess the substantive question of whether Evans was qualified to be on the ballot when the THOCB had certified Evans as qualified.  Therefore, Moss makes no claim upon which relief can be granted against the Election Commission, and we affirm the Trial Court in its grant of the Election Commission's motion to dismiss.

## Conclusion

The judgment of the Trial Court is affirmed, in part, and, reversed, in part, and this cause is remanded to the Trial Court for collection of the costs below and further proceedings consistent with this opinion.  The costs on appeal are assessed against the Appellee, Dan P. Evans.

_____
D. MICHAEL SWINEY, JUDGE