IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 8, 2016 Session

## WILLIAM THOMAS MCFARLAND v. MICHAEL S. PEMBERTON ET AL.

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Roane County**
**No. 2014105 Jon Kerry Blackwood, Senior Judge**

_____

**No. E2014-02176-SC-R11-CV – Filed September 20, 2017**

_____


SHARON G. LEE, J., dissenting.

The majority's decision misapplies Tennessee statutory and case law and creates practical problems for candidates for public office. For these reasons, I join in Justice Clark's dissent and write separately to express my concerns.

This appeal is not about whether Mr. Pemberton complied with the constitutional residency requirement; whether Mr. Pemberton or Mr. McFarland should have won the election; or whether the election should be declared void. Rather, the issue is whether a candidate for public office must challenge an election commission's decision regarding another candidate's residency by filing a lawsuit in the midst of a political campaign or be denied his day in court. The majority denies a candidate the right to file an election contest and instead requires the candidate to file a lawsuit within sixty days of an election commission's residency decision—even if the candidate filed no complaint with the election commission challenging his opponent's residency; received no formal notice of the election commission proceeding (other than a general public notice); and did not participate in the informal, nonjudicial "hearing" conducted with no procedural safeguards, no sworn testimony, and no rules of evidence, and which resulted in no written judgment or order.

In April 2014, the Election Commission, acting on a complaint filed by a voter and after conducting a hearing, decided Mr. Pemberton had satisfied the constitutional requirement that judicial candidates reside in the circuit or district for at least one year before the election. *See* Tenn. Const. art. VI, § 4. Mr. Pemberton's name was then placed

on the ballot. Mr. McFarland did not file the complaint with the Election Commission, participate in the hearing, or file a lawsuit challenging the Election Commission's decision. Instead, Mr. McFarland and Mr. Pemberton continued to campaign for office and awaited the outcome of the nonpartisan election. Tennessee Code Annotated section 2-17-113 allows Mr. McFarland to wait until the votes are counted to decide whether to contest the election. This is a statutory choice, not a personal preference. Had Mr. McFarland won the election, a lawsuit would not have been necessary. No candidate should have to spend time and money during a campaign to litigate an issue that would be rendered moot by the candidate's win at the polls. The election contest statute allows a candidate to make this sensible choice.

The majority's decision is flawed for many reasons. First, it ignores the fact that a county election commission has no explicit statutory authority to sit as a trial court, hold a hearing, and decide whether a candidate has complied with a constitutional residency requirement. An election commission has the authority to decide a voter's appeal of a decision by the coordinator of elections regarding voter registration, but this is a very different question than whether a judicial candidate has complied with a constitutional residency provision.

Second, the majority's decision relies on an inapplicable statute, Tennessee Code Annotated section 27-9-101, to deny Mr. McFarland his day in court. This statute provides that a writ of certiorari is available to "[a]nyone who may be aggrieved by any *final order or judgment* of any board or commission functioning under the laws of this state." Tenn. Code Ann. § 27-9-101 (emphasis added). The petition must be filed within sixty days from the "entry of the *order or judgment*." *Id.* § 27-9-102 (emphasis added). The Election Commission did not enter an "order or judgment" and had no statutory authority to enter an "order or judgment." Therefore, the majority holds that Mr. McFarland should have filed a petition for certiorari even though it was not an available remedy.

Third, the majority's decision renders the election contest statute meaningless under the facts of this case. Tennessee Code Annotated section 2-17-101(b) allows an incumbent office holder and any candidate for the office to "contest the outcome of an election for the office." Tenn. Code Ann. § 2-17-101(b). Tennessee Code Annotated section 2-17-113 provides: "If the person whose election is contested is found to have received the highest number of legal votes, but the election is declared null by reason of constitutional disqualifications on that person's part . . . , the election shall be declared void." *Id.* § 2-17-113. Here, the majority has effectively rewritten section 101(b) by adding the italicized language: "The incumbent office holder and any candidate for the office may contest the outcome of an election for the office, *but only if the county election commission did not previously decide a complaint filed by a voter regarding a candidate's residency*." (Emphasis added.) Taking such liberties with statutory language is contrary to the role of the judiciary.

2

Fourth, the majority's decision rejects the applicability of our previous holding in *Hatcher v. Bell*, 521 S.W.2d 799, 803 (Tenn. 1974). In *Hatcher*, Henry Denmark Bell, an unsuccessful candidate for circuit court judge, filed an election contest and alleged that the successful candidate, Abe Hatcher, was not eligible to hold office because he had not been a resident of Tennessee for more than five years as required by article VI, section 4 of the Tennessee Constitution. *Id.* at 800. The trial court declared the election void, finding that Mr. Hatcher had not met the constitutional residency requirement and was disqualified from holding office. *Id.* at 801. The Tennessee Supreme Court held that an election contest is the proper process for challenging a successful candidate's qualification to hold office, stating "[t]he election contest statute gives to the unsuccessful candidate the right to contest the validity of the election by suit . . . without limitation to any specific ground or grounds of contest." *Id.* at 803. The Court concluded:

> We hold, therefore, that an election contest is a proper proceeding to test the validity of an election on the charge that the candidate receiving the highest number of votes cast in the election has not complied with the residence requirement set forth in the Constitution and was ineligible on the day of the election to hold the office; and that the appellee, being a candidate in the election, is a proper party to institute the proceeding.

*Id.* Although this Court's ruling in *Hatcher* is directly on point, the majority disregards it.

The majority's decision creates a myriad of practical problems that adversely affects candidates for public office who are subject to a constitutional residency requirement. This includes state representatives, state senators, the governor, Supreme Court justices, and judges. *See* Tenn. Const. art. II, §§ 9, 10; art. III, § 3; art. VI, §§ 3, 4. Consider, for instance, the effect of the majority's decision on an election for State Senate in a multi-county district. The Tennessee Constitution requires that a candidate for State Senate reside in Tennessee for three years and in the county or district he represents for one year immediately preceding the election. Tenn. Const. art. II, § 10. Assume that five candidates file nominating petitions to run for the state senate seat in a five-county senatorial district. A voter files a complaint to challenge a candidate's compliance with the residency requirement in one of the five counties. The election commission in that county then holds an informal, nonjudicial hearing, without notice to the other candidates and without their participation, and decides that the candidate whose residency was challenged met the residency requirement. Under the majority's decision, the other four candidates cannot wait until all votes are counted before challenging the election commission's decision. Instead, they must all file lawsuits challenging the decision of the election commission while they are also campaigning for office, even though they did not participate in the hearing or file the residency challenge. If the candidate whose residency was challenged loses the election, then all of the lawsuits would have been for naught—a waste of time and money for the candidates, the election commission, and the courts.

3

There is another practical problem with the majority's decision. If a voter had *not* challenged Mr. Pemberton's residency before the election, Mr. McFarland presumably would have had the right to file an election contest challenging Mr. Pemberton's residency. But here, solely because a voter filed a pre-election complaint, Mr. McFarland is denied the opportunity to contest the election.

This raises yet another concern. A candidate who knows he does not comply with the constitutional residency requirement can avoid the residency requirement by enlisting a voter to challenge the candidate's residency by filing a complaint and then obtaining a favorable decision from a partisan election commission based on a "hearing" with no input from the opposing candidate or candidates, no procedural safeguards, no prehearing discovery, and no sworn testimony. The opposing candidate, who had no involvement in the hearing, must then file suit to challenge the decision or be barred from relief.

Here, had Mr. McFarland filed a lawsuit as the majority requires, a trial court could not have decided the case before voters began casting their ballots.[1] It makes no sense to require a candidate to file a lawsuit within sixty days of an election commission's decision when, by the time the lawsuit is filed, voters have received their absentee ballots in the mail.

The majority's decision disregards the election contest statute, a Tennessee Supreme Court decision, and the reality of the election process. The majority tries, at great length, to defend its decision by attacking this dissent, accusing it of relying on hyperbole, and complaining that the dissent is "imagining a series of hypotheticals." This dissenting opinion is, instead, a thoughtful and commonsense consideration of the applicable law and its practical effect on the electoral process. This dissenting opinion is

---

[1] Here is the timeline:

- April 28, 2014: Election Commission decides residency challenge.
- June 23, 2014: Deadline for Election Commission to mail absentee ballots to members of the armed forces and citizens temporarily outside the United States. *See* Tenn. Code Ann. § 2-6-503(a), (b)(1).
- June 27, 2014: Deadline to file lawsuit. *See id.* § 27-9-102.
- July 18, 2014: Early voting begins. *See id.* § 2-6-102(a)(1).
- July 27, 2014: Answer to the lawsuit due (assuming the plaintiff filed suit on the last possible day and the defendant(s) were served with process the same day the suit is filed). *See id.* § 27-9-110(a).
- August 7, 2014: Election day.

not an appellant brief and does not engage in a footnote sparring match with the majority as it attempts to advocate for and defend its decision.

_____
SHARON G. LEE, JUSTICE